AMERICAN FAMILY MUTUAL IN-SURANCE COMPANY, Appel-lant–Garnishee–Defendant,

Robert B. Beckner, Defendant,

v.

Eugene H. GINTHER and Mary Gin-ther, and James O. Clay and Imo-gene Clay, Appellees–Plaintiffs.

No. 71A05–0305–CV–214.

Court of Appeals of Indiana.

Feb. 9, 2004.

Rehearing Denied April 26, 2004.

J. Thomas Vetne, Jones Obenchain, LLP, South Bend, IN, Attorney for Appellant.

Gregory J. Haines, Rowe & Rowe, South Bend, IN, Attorney for Appellee.

### OPINION

RILEY, Judge.

### *STATEMENT OF THE CASE*

Appellant–Garnishee–Defendant, American Family Mutual Insurance Company (American Family), appeals the trial court's order denying its Motion to Dismiss and Motion for Summary Judgment.

We affirm.

### *ISSUES*

American Family raises three issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by failing to estop Eugene H. Ginther, Mary Ginther, James O. Clay, and Emma Jean Clay (collectively, the "injured motorists") from re-litigating an insurance coverage question that had been litigated and dismissed with prejudice in a prior declaratory judgment action;

(2) Whether the trial court erred by finding that Robert Beckner's (Beckner) newly purchased vehicle was in-

sured under Beckner's policy with American Family; and

(3) Whether the trial court erred by failing to estop the injured motorists from claiming that Beckner was entitled to coverage under American Family's policy when they earlier claimed that Beckner was uninsured.

## FACTS AND PROCEDURAL HISTORY

On June 28, 1997, Beckner was involved in an automobile accident with the injured motorists. The accident happened at the intersection of State Road 23 and St. Joseph Valley Parkway in South Bend, Indiana. Beckner told the investigating police officer at the scene of the accident that he did not have insurance coverage for the pickup truck.

At the time of the accident, Beckner was driving a 1963 Ford pickup truck. Beckner had purchased the pickup truck earlier that day from an acquaintance in New Buffalo, Michigan, and was on his way home to South Bend when the accident occurred. Beckner bought the pickup truck with the intent to restore it and ultimately use it in his own construction business, which he eventually created approximately one month after his purchase of the truck.

Beckner and his wife, Lee (Mrs. Beckner) (collectively, the "Beckners"), maintained a family car insurance policy (the "policy") underwritten by American Family, and the policy was in full force and effect on June 28, 1997. The policy was issued through the Glenn Shultz Agency.[1] The Beckners owned three motor vehicles, namely a 1986 Pontiac Grand Am, a 1984 Sonoma S–15 pickup truck, and the recently purchased 1963 Ford pickup truck that was involved in the collision. However, only the Pontiac Grand Am was listed on the declarations page of the policy. The 1984 Sonoma was not insured under the policy on June 28, 1997.

Several hours after the accident, Beckner arrived at his home and discussed the collision with his spouse. Mrs. Beckner informed Beckner that she called the Glenn Shultz Insurance Agency at some point during the week prior to the accident. Mrs. Beckner assured her husband that the Glenn Shultz Insurance Agency informed her that a thirty day binder provided insurance coverage to the newly acquired 1963 Ford pickup truck.

On June 30, 1997, Mrs. Beckner submitted the accident report and the title of the pickup truck to the Glenn Shultz Insurance Agency. The Beckners requested liability coverage from American Family. Mrs. Beckner explained to Karen Klima (Klima), an agent at the Glenn Shultz Agency, that her husband had purchased the 1963 Ford pickup truck over the weekend and that it was going to be used as a commercial vehicle. However, Klima informed Mrs. Beckner that since they did not have a commercial auto policy, there was no coverage under their existing policy. In particular, the Beckners held a family car insurance policy that did not cover commercial vehicles. As a result, American Family denied liability coverage to the Beckners.

On October 20, 1997, Beckner filed a Declaratory Action in the St. Joseph Circuit Court against American Family on the coverage issue. On November 26, 1997, American Family filed its Answer to Complaint for Declaratory Judgment. Beckner's attorney eventually withdrew from the Declaratory Action and the Beckners and American Family's counsel signed a

1. The Glenn Shultz Agency operates as an exclusive insurance agent for American Family and has the authority to bind coverage on behalf of American Family.

Stipulation of Dismissal.[2] On May 14, 1999, the court entered an Order of Dismissal with Prejudice. Neither Beckner nor American Family joined the injured motorists as parties to the Declaratory Action.

Rather, the injured motorists asserted an uninsured motorist claim against Safeco/American States Insurance Company (Safeco), the insurance carrier for Eugene Ginther, one of the injured motorists. The injured motorists ultimately settled their uninsured motorist claim with Safeco for the total sum of $63,017.19, which was paid out pursuant to the uninsured motorist provisions of the Safeco policy.

On June 4, 1999, the injured motorists filed the instant claim against Beckner, as subrogors for Safeco, for personal injuries sustained in the automobile accident.[3] On or about September 7, 1999, the injured motorists provided a copy of the Complaint to American Family's counsel. On December 30, 1999, the injured motorists moved for the entry of default judgment against Beckner on grounds that Beckner failed to plead or otherwise defend against their claims. In support of their motion, the injured motorists filed the Affidavit of Greg Beilach (Beilach), an insurance subrogation adjuster with Safeco. The Beilach Affidavit sets forth the amount of payments made to the injured motorists under the uninsured motorists portion of the policy. On January 31, 2000, the injured motorists obtained a Default Judgment against Beckner in the total amount of $100,000.00.

On May 17, 2000, the injured motorists filed a Verified Motion in Proceedings Supplemental, naming American Family as Garnishee–Defendant. On September 20, 2000, American Family filed a Motion to Dismiss the Proceedings Supplemental on grounds that the coverage issue had previously been litigated in the declaratory judgment action.[4] American Family argued that the injured motorists, as subrogors of Safeco, were barred by the principles of res judicata and collateral estoppel from re-litigating the coverage issue because the injured motorists had an opportunity to intervene in Beckner's declaratory judgment action, but failed to do so. On September 27, 2000, the injured motorists filed their Response to American Family's Motion to Dismiss. On September 28, 2000, a hearing on the motion was held and the trial court took the matter under advisement. On January 10, 2001, the trial court denied American Family's Motion to Dismiss.

On January 25, 2001, American Family filed its Motion to Certify Interlocutory Order. On March 8, 2001, a hearing on this motion was held. On March 12, 2001, the trial court certified its Order of Janu-

---

2. Mrs. Beckner was joined as a party to Beckner's Declaratory Action prior to its dismissal, per American Family's request.

3. The Ginthers and the Clays are Plaintiffs in the action against Beckner under their Receipt and Trust Agreement with the Ginthers' uninsured motorist carrier, Safeco. The Receipt and Trust Agreement requires that the Ginthers and the Clays hold in trust any claims they may have against Beckner and that the Ginthers and the Clays agree to take such action as may be necessary to recover damages against Beckner. The prospect of double recovery to the Ginthers and the Clays

is thereby avoided because the damages awarded to the Ginthers and the Clays by the trial court are held in trust and will be paid to the uninsured motorists carrier, Safeco.

4. It is conceded that this Motion to Dismiss should be treated as a Motion for Summary Judgment because the motion refers to matters outside of the pleadings. However, we will continue to refer to the motion as a Motion to Dismiss to avoid confusion with the subsequently filed Motion for Summary Judgment by American Family.

ary 10, 2001, for purposes of interlocutory appeal. On April 6, 2001, this court declined to undertake an interlocutory review of the trial court's Order denying American Family's Motion to Dismiss.

On July 27, 2001, American Family filed its Motion for Summary Judgment in the Proceeding Supplemental. American Family argued that the 1963 Ford pickup truck was not an insured vehicle under the terms and conditions of the policy. Additionally, American Family argued that the injured motorists should be judicially estopped from asserting coverage when they had previously taken the position that Beckner was an uninsured motorist.

On October 5, 2001, the injured motorists filed their Response with a Cross–Motion for Summary Judgment. On October 30, 2001, American Family filed its Reply in Support of its Motion for Summary Judgment and Response to the injured motorists' Cross–Motion for Summary Judgment. On November 7, 2001, a hearing was held on the Cross–Motions for Summary Judgment. On that same date, the trial court took the matter under advisement.

On April 3, 2003, the trial court entered a written Order denying American Family's Motion for Summary Judgment and granting the injured motorists' Motion for Summary Judgment. The trial court specifically held that the 1963 Ford pickup truck was insured by American Family pursuant to paragraphs 14(b) or 14(c) of the policy and that Mrs. Beckner sought coverage for the vehicle within thirty (30) days of its acquisition. The trial court also held that the injured motorists' claim was not barred by the doctrine of collateral estoppel.

American Family now appeals the trial court's Order of January 10, 2001, denying its Motion to Dismiss and the trial court's Order of April 3, 2003, granting summary judgment in favor of the injured motorists. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a motion for summary judgment, we apply the same standard as the trial court, and we resolve any question of fact or an inference to be drawn therefrom in favor of the non-moving party. *Bartle v. Health Quest Realty VII*, 768 N.E.2d 912, 916 (Ind.Ct.App.2002). Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C).

Once the moving party has met this burden with a prima facie showing, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact for trial. *Id.* Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Id.* The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Id.*

The purpose of summary judgment is to terminate litigation where there is no factual dispute which can be determined as a matter of law. *Piers v. American United Life Ins. Co.*, 714 N.E.2d 1289, 1290 (Ind. Ct.App.1999). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Farm Bureau Ins. Co. v. Allstate Ins. Co.*, 765 N.E.2d 651, 655 (Ind.Ct.App. 2002). Instead, we consider each motion separately to determine whether the mov-

ing party is entitled to judgment as a matter of law. *Id.*

## II. *Collateral Estoppel*

First, American Family argues that the trial court abused its discretion by failing to estop the injured motorists from asserting a claim for coverage under Beckner's policy. Specifically, American Family contends that the issue of Beckner's liability coverage was adjudicated in the prior declaratory judgment action between American Family and Beckner. American Family maintains that the injured motorists should have intervened in the prior action rather than re-litigate the coverage issue in the instant lawsuit.

Conversely, the injured motorists assert that the doctrine of collateral estoppel is unavailable to American Family. In particular, the injured motorists contend that since they were not parties to the prior litigation dispute and have not previously litigated the issue of Beckner's liability coverage, they are not estopped from litigating this issue in the instant action.

█ Issue preclusion, often referred to as collateral estoppel, bars subsequent litigation of a fact or issue which was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Bartle v. Health Quest Realty VII,* 768 N.E.2d at 917; *Mendenhall v. City of Indianapolis,* 717 N.E.2d 1218, 1225 (Ind.Ct.App.1999); *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 968 (Ind.1998). In that situation, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Sullivan v. American Casualty Co. of Reading, Pa.,* 605 N.E.2d 134, 137 (Ind.1992). However, the former adjudication will only be conclusive as to those issues which were actually litigated and determined therein. *Wedel v. American Elec. Power Serv. Corp.,* 681 N.E.2d

1122, 1131 (Ind.Ct.App.1997), *trans. denied.*

█ Collateral estoppel does not extend to matters which were not expressly adjudicated and can be inferred only by argument. *Peterson v. Culver Educational Foundation,* 402 N.E.2d 448, 461 (Ind. Ct.App.1980). The primary consideration in the use of collateral estoppel is whether the party against whom the former adjudication is asserted had "a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances" to permit the use of issue preclusion in the subsequent action. *Sullivan,* 605 N.E.2d at 138. Review of a trial court's decision regarding the use of issue preclusion is subject to an abuse of discretion standard. *Shell Oil,* 705 N.E.2d at 969.

█ In the present case, American Family maintains that the two elements of the *Sullivan* test are satisfied, and therefore the doctrine of collateral estoppel applies. Specifically, American Family argues that the injured motorists and their subrogee, Safeco, had a full and fair opportunity to litigate the coverage issue in Beckner's declaratory judgment action. However, we disagree with American Family. Our review of the record shows that the injured motorists were not parties in Beckner's declaratory action and therefore did not have a full and fair opportunity to litigate the coverage issue. *See Sullivan,* 605 N.E.2d at 138. Although American Family contends that the injured motorists should have intervened in the declaratory judgment action, Indiana Code section 34–14–1–11, provides otherwise. In particular, Indiana Code section 34–14–1–11, states, in pertinent part:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest that would be affected by the declaration, and no decla-

ration shall prejudice the rights of persons not parties to the proceedings.

Thus, it was the person seeking declaratory relief that should have joined the injured motorists, namely Beckner. Nevertheless, the statute clearly provides that the injured motorists shall not be prejudiced because they were not parties to the declaratory judgment. *See* Ind.Code § 34–14–1–11.

Furthermore, we find that the injured motorists' reliance on *Araiza v. Chrysler Insurance Co.,* 699 N.E.2d 1162 (Ind.Ct. App.1998), clarified, 703 N.E.2d 661 (Ind. Ct.App.1998), *trans. denied,* is proper. In *Araiza,* the tortfeasor's insurer was provided with notice of a pending negligence action against the tortfeasor, and the insurer did not respond. The accident victim obtained a default judgment against the tortfeasor. The accident victim then filed a proceeding supplemental against the tortfeasor's insurer and the insurer answered, raising policy defenses. The tortfeasor's insurer subsequently filed a separate declaratory action against its own insured, the accident victim, and the accident victim's uninsured motorist carrier. The proceeding supplemental and the declaratory action were consolidated and a default judgment was entered against the tortfeasor.

The tortfeasor's insurer then moved to dismiss the accident victim's proceeding supplemental based upon the default judgment against the accident victim in the declaratory action. In *Araiza,* this court denied the tortfeasor's insurer's Motion to Dismiss the accident victim's proceeding supplemental and found that the tortfeasor's insurer could not rely on the default of its insured as a conclusive determination of its coverage obligations. In particular, the trial court determined the rights of only one party, the tortfeasor, and the obligation of the tortfeasor's insurer only as it relates to the tortfeasor. The trial court did not determine the accident victim's rights or tortfeasor's insurer's obligation as it relates to the injured party. In doing so, this court stated that the accident victim "had an interest in the policy proceeds which vested at the time of the accident." *Araiza,* 699 N.E.2d at 1163. Furthermore, we held that the tortfeasor's inattention to or disregard of tortfeasor's insurer's declaratory action did not prevent the accident victim from establishing the availability of liability coverage to satisfy their judgment against the tortfeasor.

■ Based upon *Araiza,* we likewise find that the injured motorists have an interest in the American Family policy and have not litigated the coverage issue arising from the accident. The injured motorists have an interest in the policy proceeds, which vested at the time of the accident. *See Araiza,* 699 N.E.2d at 1163. The nature of that interest and whether it entitles the injured motorists to payment in satisfaction of their judgment against Beckner remains to be determined.

Therefore, we conclude that the injured motorists did not have a full and fair opportunity to litigate the issue of American Family's obligation under their policy of insurance to Beckner. *See Sullivan,* 605 N.E.2d at 138. Consequently, we find that the trial court properly granted summary judgment to the injured motorists on this issue. Moreover, having determined that the injured motorists had not litigated the issue of American Family's liability coverage, we need not address "whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel." *See id.*

III. *American Family Policy Coverage*

Next, American Family alleges that the trial court erred by finding that the Ford pickup truck was covered under Beckner's

American Family policy. Specifically, American Family contends, that based upon the language of the policy, the newly acquired Ford pickup truck was not an insured vehicle for coverage purposes. As a result, American Family claims the injured motorists should not be allowed to recover under this policy.

On the other hand, the injured motorists assert that Beckner had coverage under his American Family policy for the Ford pickup truck. Consequently, the injured motorists maintain that the trial court did not err in finding that Beckner's Ford pickup truck was covered under his American Family insurance policy.

 The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution. *Estate of Eberhard v. Illinois Founders Ins. Co.*, 742 N.E.2d 1, 2 (Ind.Ct.App.2000); *Indiana Ins. Co. v. American Community Servs., Inc.*, 718 N.E.2d 1147, 1153 (Ind.Ct.App.1999). A court may not rewrite an insurance contract. *Estate of Eberhard*, 742 N.E.2d at 2. If an insurance contract is clear and unambiguous, the language must be given its plain meaning. *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind.1985). However, if there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity. *Indiana Ins. Co.*, 718 N.E.2d at 1153. Ambiguity in an insurance policy exists when the language is susceptible to more than one interpretation and reasonably intelligent persons could honestly differ as to the meaning of the policy language. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 439–40 (Ind.Ct.App.2000), *trans. denied.*

 The American Family policy, paragraphs 14(a) and 14(c), state, in pertinent part:

14. Your insured car means:

 a. Any car described in the declarations and any private passenger car or utility car you replace it with. You must tell us within 30 days of its acquisition.

 c. Any additional private passenger car or utility car of which you acquire ownership during the policy period, provided:

 (1) If it is a private passenger car, we insure all of your other private passenger cars; or

 (2) If it is a utility car, we insure all of your other private passenger cars and utility cars.

 You must tell us within 30 days of its acquisition that you want us to insure the additional car.

(Appellant's App. p. 106). First, American Family claims that the trial court erred in finding that the Ford pickup truck was covered under Paragraph 14(b) of the policy. In particular, American Family argues that only one of the three vehicles owned by the Beckners on June 28, 1997, qualified as an insured vehicle on the declarations page of the insurance policy. As a result, American Family maintains that there can be no coverage for the newly acquired Ford pickup truck under paragraph 14(b) of the policy because American Family did not insure all of the Beckner's private passenger cars and utility cars on June 28, 1997. However, we find that American Family's argument is misleading and without merit.

Our review of the record indicates that the Beckners owned two other vehicles prior to the pickup truck purchased on June 28, 1997. As previously mentioned, the Beckners owned a 1986 Pontiac Grand Am, which is listed on the declarations

page of the insurance policy; and a 1984 Sonoma pickup truck, which was not insured with American Family. However, further review of the record reveals that the 1984 Sonoma pickup truck was not insured with American Family because it had been unused for six months. In fact, Beckner testified that the 1984 Sonoma pickup truck "just sat" in the yard and no one drove the truck. (Appellant's App. p. 66).

Additionally, the record reflects that Mrs. Beckner informed American Family's agent, the Glen Shultz Agency, within thirty days of the Ford pickup truck's acquisition that they wanted to insure this additional car. As mentioned above, the American Family policy definition of "your insured car" also includes Paragraph 14(c), which states, "any additional . . . utility car of which you acquire ownership during the policy period. You must tell us within 30 days of its acquisition that you want us to insure that additional car." (Appellant's App. p. 106). Thus, pursuant to paragraph 14(c) of the policy, the Beckner's followed the proper procedure to secure coverage of the newly acquired Ford pickup truck.

Nevertheless, American Family contends that the Beckners are not covered under the policy's provisions in paragraph 14(c) because the Ford pickup truck is not defined as a "private passenger car" under the policy. In particular, American Family asserts that the coverage for this vehicle depends upon the policy's definition of utility car. The policy defines "utility car" in paragraph 10, which states, in pertinent part:

Utility car means:

a. "a car with a rated load capacity of 2,000 pounds or less, of the pickup, van, sedan delivery or panel truck type if not used in any business or occupation."

(Appellant's App. p. 106). Thus, since Beckner admittedly purchased the Ford pickup truck with the intent to use it in his business, American Family argues that the pickup truck is not covered under the policy.

■ The injured motorists argue that the proper focus regarding the determination of whether Beckner used the pickup truck in any business or occupation is the use of the pickup truck at the time of the accident. We agree with the injured motorists. *See Estate of Eberhard,* 742 N.E.2d at 1 (where the insurer successfully argued that no coverage was afforded its insured under a personal auto policy when the insured was escorting for pay, a truck with an oversized load at the time the insured was involved in a motor vehicle accident); *see also Alderfer v. State Farm Mutual Ins. Co.,* 670 N.E.2d 111 (Ind.Ct. App.1996) (wherein this court held that a business use policy exclusion precluded coverage for a volunteer firefighter who was injured in a motor vehicle accident while conducting his volunteer firefighting duties).

■ Here, the record reveals that at the time Beckner was involved in the accident with the injured motorists, he had just purchased the Ford pickup truck. As previously mentioned, Beckner testified that he had purchased the pickup truck with the intent to restore it and eventually use it in his own construction business. Particularly, Beckner purchased the pickup truck to carry material for a home-based roofing and siding business he was in the process of starting. However, the record clearly shows that at the time of the accident, the business was not in existence. In fact, Beckner's unincorporated construction business was not formally operational until approximately July 13, 1997.

Thus, at the time of Beckner's accident with the injured motorists he was using

the pickup truck as personal transportation to get from New Buffalo, Michigan to his family residence. Consequently, we conclude that Beckner was not using the pickup truck for a business or occupation purpose at the time of the accident with the injured motorists. *See Estate of Eberhard*, 742 N.E.2d at 1; *see Alderfer*, 670 N.E.2d at 111. Accordingly, we find that the trial court did not err by finding that the Ford pickup truck was an insured vehicle under the policy.

Based upon all of the above, pursuant to the plain and unambiguous terms of the policy, we find that the trial court properly determined that the Ford pickup truck qualifies as a car under the liability coverage of American Family's policy, pursuant to paragraphs 14(b) and 14(c). *See Allstate Ins. Co.*, 481 N.E.2d at 1101. Therefore, we conclude that no genuine issue of material fact exists regarding whether the Beckner's policy of insurance covered the Ford pickup truck. *See* T.R. 56(C). As a result, we conclude that the trial court did not err in granting summary judgment in favor of the injured motorists.

## IV. *Judicial Estoppel*

Lastly, American Family contends that the trial court erred by not applying the doctrine of judicial estoppel to preclude the injured motorists' claim for coverage under Beckner's policy. American Family asserts that the injured motorists assumed contrary positions at different stages in this litigation in order to maximize their financial recovery. In particular, American Family argues that the injured motorists previously claimed that Beckner was uninsured in a claim with Safeco. However, the injured motorists now claim that Beckner was insured with American Family.

Conversely, the injured motorists allege that they did not assert in any judicial proceeding that Beckner was rightfully denied liability coverage. As a result, the injured motorists contend that American Family's argument is without merit. We agree.

At the outset, we note that, American Family does not specify which theory of estoppel they rely upon, but instead refers to principles of estoppel generally. Particularly, the substance of their argument focuses on principles of both equitable estoppel and judicial estoppel. Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon their conduct in good faith and without knowledge of the facts. *Wabash Grain, Inc.*, 700 N.E.2d 234, 237 (Ind.Ct. App.1998); *Brokaw v. Roe*, 669 N.E.2d 1039, 1041 (Ind.Ct.App.1996), *trans. denied*. The elements of equitable estoppel are: (1) a representation or concealment of a material fact, (2) made by a person with knowledge of the fact and with the intention that the other party act upon it, (3) to a party ignorant of the fact, and (4) which induces the other party to rely or act upon it to his detriment. *Id.* The reliance element has two prongs: (1) reliance in fact, and (2) right of reliance. *Id., In re Marriage of Murray*, 460 N.E.2d 1023, 1026 (Ind.Ct.App.1984). In addition, estoppel exists "only as between the same parties or those in legal privity with them." *Id.*

In contrast, judicial estoppel prevents a party from asserting a position in a legal proceeding inconsistent with one previously asserted. *Id.; Shewmaker v. Etter*, 644 N.E.2d 922, 931 (Ind.Ct.App. 1994), *adopted on trans.*, 659 N.E.2d 1021 (Ind.1995). Specifically, in *Tobin v. McClellan*, 225 Ind. 335, 346–47, 73 N.E.2d 679, 684 (1947), our supreme court stated:

It is the general rule that *allegations or admissions in pleadings in a former*

*action or proceeding will ordinarily estop the party making them from denying their truth in a subsequent action or proceeding in which he is a party* to the prejudice of his opponent where the usual elements of estoppel by conduct are present. Also, there must have been a determination of the prior action, or, at least, the allegations or admission must have been acted on by the court in which the pleadings were filed or by the parties claiming the estoppel.

(citations and quotations omitted) (emphasis added). Unlike equitable estoppel, which focuses on the relationship between the parties, judicial estoppel focuses on the relationship between a litigant and the judicial system. *Wabash Grain, Inc.*, 700 N.E.2d at 237–38. The purpose of judicial estoppel is to protect litigants from allegedly improper conduct by their adversaries. *Id.*

██ In this case, American Family attempts to preclude the injured motorists from asserting that Beckner is covered under a policy of insurance issued by American Family, due to their previous position that Beckner was uninsured. First, we note that, the injured motorists were not a party to any judicial proceeding with Beckner and American Family. As discussed above, equitable estoppel requires identity of parties for its application. *See Wabash Grain, Inc.*, 700 N.E.2d at 238. As a result, we find that the doctrine of equitable estoppel does not apply in the instant case.

██ Second, we find that American Family's argument relying on judicial estoppel must also fail. The record reflects that after American Family denied liability coverage to Beckner, the injured motorists qualified for uninsured motorists coverage. The injured motorists then filed a suit against Beckner and eventually filed a Proceeding Supplemental against Beck-

ner's liability insurer, American Family. However, our review of the record indicates that the injured motorists at all times claimed that Beckner had in force and effect a policy of insurance with American Family and that American Family has or may have an obligation owing to the injured motorists.

In particular, under the terms of the original Complaint against Beckner, the injured motorists asserted that Beckner "had in force and effect a policy of insurance with American Family Insurance Company which provided liability coverage to him arising out of motor vehicle accident which occurred on or about June 28, 1997 ...". Additionally, the injured motorists' Verified Motion for Proceeding Supplementary contained a statement that "American Family Mutual Insurance Company, the Garnishee–Defendant herein, has or may have an obligation owing to the Plaintiff and/or Defendants subject to the Proceeding Supplemental, namely, Plaintiffs have the legally protectable interest in Defendant's motor vehicle liability policy." Further, the Ginther's uninsured motorists carrier, Safeco, submitted an affidavit in support of the default judgment against Beckner. This affidavit explained that payments were made to the injured motorists in satisfaction of their claims brought under the uninsured motorist provisions of the Ginther's policy. The record clearly shows that the affidavit supported the damage award against Beckner but did not contain an assertion that American Family's coverage position was correct.

Furthermore, as previously mentioned, the injured motorists are pursuing this claim as plaintiffs against Beckner under their Receipt and Trust Agreement with the Ginther's uninsured motorist carrier, Safeco. The Receipt and Trust Agreement requires that the injured motorists hold in trust any claims they may have

against Beckner and that the injured motorists agree to take such action as may be necessary to recover damages against Beckner. Therefore, the prospect of double recovery to the injured motorists is thereby avoided because the damages awarded to them by the trial court are held in trust and will be paid to the uninsured motorist carrier, Safeco.

Based upon the foregoing, we find that American Family's argument that the injured motorists assumed contrary positions at different stages in this litigation to maximize their financial recovery is without merit. We further conclude that the doctrine of judicial estoppel does not apply to preclude the injured motorists' claim for coverage under Beckner's policy. As a result, we find that the trial court did not err by granting summary judgment to the injured motorists and denying American Family's Motion to Dismiss.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly denied American Family's Motion to Dismiss and Motion for Summary Judgment. Therefore, we affirm the trial court's grant of summary judgment in favor of the injured motorists.

Affirmed.

FRIEDLANDER, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

I fully concur as to Parts I and II.

With regard to Part III, I agree that, as stated on p. 234, the trial court did not err in finding that the Ford pickup was an insured vehicle. I do not do so, however, only for the reason that Beckner was not using it for a business or occupation at the time of the accident. Rather I do so because the truck was a "car ... of the pickup ... type" and was "not used in any business or occupation."[5] Appellant's App. at 106. Here, as noted by the majority, the projected business use had not yet been possible because the business did not yet exist. My reading of the insurance provision therefore makes the truck a "utility car." I then conclude that because the Sonoma pickup was inoperable and not subject to coverage and because the only other vehicle, i.e. the 1986 Grand Am, a passenger vehicle, was covered by American Family, it is an "additional ... utility car" covered by paragraph 14. b(2) of the insurance policy.

With respect to Part IV, I agree that the doctrine of judicial estoppel is not applicable to the facts before us. However, I do so because the assertion by the injured motorists that Beckner was uninsured in their claim upon the policy with Safeco was not made pursuant to a lawsuit. The recovery from Safeco was obtained without judicial action. There was no complaint filed in a judicial forum giving rise to judicial estoppel. *See Brightman v. State,* 758 N.E.2d 41 (Ind.2001) (citing *Shewmaker v. Etter,* 644 N.E.2d 922 (Ind.Ct.App. 1994), *opinion adopted by Hammes v. Brumley,* 659 N.E.2d 1021 (Ind.1995)).

---

**5.** In this respect I believe the particular use at the time of the accident is not determinative. A vehicle could very well be used generally in the business or occupation of the owner but at the precise time in issue being used for a personal purpose.