


FILED
Jun 27 2025, 9:04 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

In re: the Visitation of J.R.H. (Minor Child),

Michelle K. Deaton-Hedge and Scott P. Hedge
(Maternal Grandparents and Adoptive Parents),

*Appellants-Respondents,*

v.

Dale Hartlerode (Paternal Grandfather),

*Appellee-Petitioner*

---

June 27, 2025

Court of Appeals Case No.
24A-MI-3083

Appeal from the Scott Superior Court

The Honorable Bradley Jacobs, Special Judge

Trial Court Cause No.
72D01-2302-MI-7

---

**Opinion by Judge May**
Judges Mathias and Bradford concur.

**May, Judge.**

[1] Michelle K. Deaton-Hedge ("Michelle") and Scott P. Hedge ("Scott") (collectively, "Maternal Grandparents"), the biological maternal grandparents and adoptive parents of J.R.H. ("Child"), appeal the trial court's order granting Dale Hartlerode ("Paternal Grandfather") grandparent visitation with Child. The parties present several issues for our review, which we consolidate and restate as whether the trial court erred by concluding Paternal Grandfather could petition for grandparent visitation with Child after Maternal Grandparents adopted her because Maternal Grandparents failed to notify Paternal Grandfather of their petition to adopt Child despite an open case by Paternal Grandfather seeking guardianship over Child when Maternal Grandparents filed their adoption petition. We affirm.

## Facts and Procedural History

[2] Child was born in 2020. Following her birth, Child lived with her biological father and Paternal Grandfather in Paternal Grandfather's house. After approximately six months, Child's biological father and Child moved out of Paternal Grandfather's house to live with Child's biological mother in Louisville, Kentucky. From the time of Child's birth, Paternal Grandfather and Maternal Grandparents took turns assisting her biological parents by providing childcare.

[3] Child's biological father died from a drug overdose on July 1, 2022. Following her biological father's death, Child split time between Maternal Grandparents'

house and Paternal Grandfather's house, but she primarily resided with Maternal Grandparents. On July 11, 2022, Paternal Grandfather and his fiancée filed a petition for guardianship over Child in the Harrison Circuit Court under Cause Number 31C01-2207-GU-000024 ("Guardianship Case"). Maternal Grandparents then, with Child's biological mother's consent, cross-petitioned for guardianship over Child. Child's biological mother died by homicide on July 31, 2022.

[4] On August 6, 2022, Michelle sent Paternal Grandfather's fiancée a text message stating that

> the only reason I have been keeping [Child] on your weekends now is because my lawyer recommended it until we settle this in court. If you had not gotten a lawyer none of this would of [sic] had to of [sic] happened really. I don't like doing this because I would not want it done to . . . me. But I have been advised to do so until we have it settled in court.

(Ex. Vol. 1 at 5.) At some point, Paternal Grandfather's visits with Child resumed but only when Maternal Grandparents would allow it.

[5] Before setting a contested hearing, the trial court in the Guardianship Case ordered Paternal Grandfather and Maternal Grandparents to participate in mediation. The parties agreed on a mediator, but they could not agree on a time for the mediation to occur. In September 2022, before mediation could be scheduled, Indiana Governor Eric Holcomb appointed Paternal Grandfather's attorney to serve as a judge. Paternal Grandfather's attorney withdrew his representation, which left Paternal Grandfather unrepresented.

[6]     On October 26, 2022, Maternal Grandparents filed a verified petition to adopt Child in the Scott Superior Court under Cause Number 72D01-2210-AD-000044 ("Adoption Case"). Maternal Grandparents stated in their verified petition seeking to adopt Child that "[n]o guardianship has been established." (Appellant's App. Vol. 2 at 42.) The verified petition did not mention the pending Guardianship Case or the Harrison Circuit Court's order directing them to engage in mediation with Paternal Grandfather. Maternal Grandparents did not serve Paternal Grandfather with the adoption petition or otherwise inform him about it.

[7]     On December 12, 2022, the trial court in the Adoption Case granted Maternal Grandparents' petition for adoption and entered a decree declaring Maternal Grandparents to be Child's adoptive parents. Paternal Grandfather hired a new attorney to represent him in the Guardianship Case on December 21, 2022. On January 4, 2023, Maternal Grandparents filed a motion to dismiss in the Guardianship Case. In the motion to dismiss, Maternal Grandparents asserted "guardianship herein has not been granted" and Child "was adopted by [Maternal Grandparents] on December 12, 2022." (Appellee's App. Vol. 2 at 22.) The trial court in the Guardianship Case dismissed the case on January 22, 2023.

[8]     Maternal Grandparents discontinued allowing Paternal Grandfather to visit with Child, and Paternal Grandfather filed the instant verified petition for

grandparent visitation, pursuant to the Grandparent Visitation Act[1] ("GVA"), under Cause Number 72D01-2302-MI-000007 on February 16, 2023. In his petition, Paternal Grandfather asserted that he had not been notified of the adoption petition despite the open Guardianship Case and characterized the adoption as part of an effort by Maternal Grandparents to keep him from having a relationship with Child. He averred: "It is in [Child's] best interest to have contact with me and my family. It is important for her to know her father's family and know her paternal family." (Appellant's App. Vol. 2 at 31.) Paternal Grandfather attached records from the Guardianship Case and Maternal Grandparents' petition for adoption to his petition seeking grandparent visitation.

On March 24, 2023, Maternal Grandparents filed a motion to dismiss Paternal Grandfather's petition. Maternal Grandparents argued that by virtue of the adoption decree Paternal Grandfather's status as Child's grandparent was terminated and, therefore, he did not have standing to pursue a petition for grandparent visitation. The trial court held a hearing on the motion to dismiss on June 29, 2023. Michelle testified at that hearing that she did not inform the trial court in the Adoption Case about the pending Guardianship Case because she "didn't realize that it was even still out there. I mean nothing was going on[.]" (Tr. Vol. 2 at 53.) Paternal Grandfather moved for the trial court to take

---

[1] Ind. Code § 37-17-5-6, *et. seq.*

judicial notice of the records in the Adoption Case, and the trial court held a hearing on that motion on November 20, 2023.

[10] On December 13, 2023, the trial court granted Paternal Grandfather's motion to take judicial notice and issued an order with findings of fact and conclusions of law denying Maternal Grandparents' motion to dismiss. The trial court recited the procedural history of the Guardianship Case and the Adoption Case and found "that as the biological grandfather of [Child], and as a caretaker of [Child] and her biological father for a significant portion of [Child's] young life, [Paternal Grandfather] has standing to petition for visitation." (Appellant's App. Vol. 2 at 16.)

[11] The trial court then held a final hearing on Paternal Grandfather's petition for grandparent visitation on March 8, 2024. Paternal Grandfather testified at the final hearing that he thought Maternal Grandparents would "be a good mother and father to" Child, but he also wanted Child "to know her other family." (Tr. Vol. 2 at 125.) Maternal Grandparents asserted they did not intend to keep Paternal Grandfather out of Child's life, but they argued they "should have the discretion as to when and where and not be ordered by some court to do that." (*Id*. at 141.)

[12] On April 30, 2024, the trial court issued an order with findings of fact and conclusions of law granting Paternal Grandfather's petition for visitation. The trial court ruled Paternal Grandfather had standing to pursue grandparent visitation. The trial court explained that "[a]t the time of the filing of the

Petition for Adoption in Scott Superior Court, [Paternal Grandfather] would have had standing to seek visitation under the [GVA]." (Appellant's App. Vol. 2 at 18.) The court noted that "[t]he Petition for Adoption was granted and no mention was made of the pending guardianship case." (*Id*.) In addition, the trial court stated:

> Turning to the best interest of the child, the Court finds that both grandparents appear to be caring individuals who seek to act in the best interests of [Child]. The Court can find no reason to deny [Paternal Grandfather] visitation with [Child], and indeed feels [Child] would benefit from a relationship with paternal grandfather.

(*Id*. at 19.) Maternal Grandparents did not allow Paternal Grandfather to visit with Child until the trial court entered a temporary visitation schedule on December 10, 2024. On April 2, 2025, the trial court issued an order granting Paternal Grandfather unsupervised visitation every Friday from 12 p.m. to 6 p.m.

## Discussion and Decision

[13] Maternal Grandparents contend Paternal Grandfather did not have standing to petition for grandparent visitation following their adoption of Child and, therefore, the trial court erred in granting Paternal Grandfather's petition.[2]

---

[2] Paternal Grandfather contends that to the extent Maternal Grandparents seek to appeal the trial court's orders other than the ones setting Paternal Grandfather's visitation schedule, their appeal is untimely. However, we previously dismissed Maternal Grandparents appeal of the order granting Paternal Grandfather's petition for grandparent visitation as a non-final order because it did not dispose of all claims

Indiana Code section 31-17-5-6 provides that "[u]pon hearing evidence in support of and opposition to a petition filed under [the GVA], the court shall enter a decree setting forth the court's findings and conclusions." In addition, prior to both the hearing on the motion to dismiss Paternal Grandfather's petition and the final hearing, Paternal Grandfather requested that the trial court enter findings of fact and conclusions of law. In such situations, we apply a two-tiered standard of review "and affirm when the evidence supports the findings, and when the findings support the judgment." *Wysocki v. Johnson*, 18 N.E.3d 600, 603 (Ind. 2014.) We will not set aside a finding or judgment unless it is clearly erroneous. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 216 (Ind. 2012). When reviewing factual findings, we do not reweigh the evidence or judge the credibility of the witnesses. *Id.* "The evidence is viewed in the light most favorable to the judgment, and we will defer to the trial court's factual findings if they are supported by the evidence and any legitimate inferences therefrom." *Id.* at 216-17. However, we review a trial court's legal conclusions de novo. *Id.* at 217.

---

as to all parties. *M.K.D.-H. v. D.H.*, 247 N.E.3d 1233, 1236 (Ind. Ct. App. 2024). The order directed the parties to attend mediation or to work with a parenting time coordinator in order to establish a visitation schedule. *Id.* Here, the trial court has established a visitation schedule. Thus, the trial court's order granting Paternal Grandfather's petition is now properly before us. *See, e.g., Lipginski v. Lipginski*, 476 N.E.2d 924, 926 (Ind. Ct. App. 1985) (holding trial court order that granted petition for grandparent visitation and set visitation schedule was a final, appealable order despite provision providing for periodic review of whether visitation should be continued, expanded, or terminated).

Indiana Code section 31-17-5-1 allows a child's grandparent to seek visitation rights if the child's parent is deceased, and Indiana Code section 31-17-5-9 allows some grandparent visitation rights to survive an adoption:

> Visitation rights provided for in section 1 . . . of this chapter survive the adoption of the child by any of the following:
>
> (1) A stepparent.
>
> (2) A person who is biologically related to the child as:
>
> > (A) a grandparent;
> >
> > (B) a sibling;
> >
> > (C) an aunt;
> >
> > (D) an uncle;
> >
> > (E) a niece; or
> >
> > (F) a nephew.

Maternal Grandparents argue that by virtue of their adoption of Child, Paternal Grandfather is no longer Child's grandparent, and because Paternal Grandfather did not secure grandparent visitation rights prior to the adoption, his time to establish such rights has expired. In support of their argument, Maternal Grandparents rely on *Jocham v. Sutliff*, 26 N.E.3d 82 (Ind. Ct. App. 2015), *trans. denied*. In that case, Kirk and Stephanie Jocham had one child, K.J., in 2004, and they divorced in 2008. *Id*. at 84. Kirk then married Emily in 2011, and Stephanie died later that year. *Id*. Emily legally adopted K.J. in 2012. *Id*. In 2013, Melba Sutliff, K.J.'s biological maternal grandmother, moved to intervene in the 2008 divorce and petitioned for grandparent

visitation with K.J. *Id.* The trial court allowed Sutliff to intervene and granted her petition for visitation, but we reversed the trial court. *Id.* at 84-85. We explained that

> had Sutliff filed a petition for grandparent visitation at any time after [Kirk] and Stephanie filed for divorce up to the day Emily's adoption of K.J. was final, we would agree with the trial court that she had the right to petition for visitation rights and that any visitation rights granted to her as a result of the petition survived the adoption.

*Id.* at 86. However, because Emily was K.J.'s mother when Sutliff filed her petition for grandparent visitation and Sutliff was not Emily's parent, Sutliff lacked standing to file her petition. *Id.* at 87. We observed that "section 31-17-5-9's reference to the '[v]isitation rights provided in section 1' as surviving stepparent adoption means not that the ability to go to court survives the adoption but that the right to visit already given by a court survives." *Id.* at 87-88 (brackets in *Jocham*).

[16] In *Kornman v. Bowling*, E.K.'s biological maternal grandmother ("Grandmother) filed a petition for grandparent visitation in Madison County, but the child resided in Hamilton County at the time. 228 N.E.3d 1120, 1122 (Ind. Ct. App. 2024), *trans. denied.* Later that month, a trial court in Hamilton County entered a decree of adoption declaring E.K.'s stepmother to be his adoptive mother. *Id.* The Madison County court then transferred Grandmother's petition to Hamilton County, and the Hamilton County court assigned it a new cause number. *Id.* E.K.'s biological father and adoptive mother then filed a motion

for summary judgment arguing Grandmother lacked standing to pursue grandparent visitation because of the adoption decree. *Id.* The trial court ruled Grandmother had standing and granted her petition. *Id.* E.K.'s biological father and adoptive mother appealed. *Id.*

[17] We held that even though Grandmother's petition for visitation was initially filed in the wrong venue, she still had standing to pursue grandparent visitation because she filed the petition before her grandchild was adopted. *Id.* at 1124. We explained "the GVA provides that a grandparent must file a petition for visitation prior to the date a decree of adoption is *entered*, and that is what Grandmother did. If Grandmother had filed the visitation petition after the adoption decree was entered, she arguably would have lacked standing." *Id.* (emphasis in original) (internal citations omitted). However, we further observed that "in that case, there could have been successful equitable arguments that Parents were estopped from attacking Grandmother's standing claim, such as the argument that they should not benefit from their own failure to give Grandmother notice of the adoption proceeding as required by law." *Id.* at 1124 n.2.

[18] In the trial court's order granting Paternal Grandfather's petition for grandparent visitation, the trial court portrayed Paternal Grandfather's guardianship petition as a pre-adoption petition for grandparent visitation and concluded he had standing:

> At the time of the filing of the Petition for Adoption in Scott Superior Court, [Paternal Grandfather] would have had standing

to seek visitation under the Grandparent Visitation Act. Further, at that time, a lawsuit was pending in which [Paternal Grandfather] sought visitation with his granddaughter, [Child]. The Respondent asserts that lawsuit does not comply with the provisions of the GVA and the Court must agree. Had the lawsuit been entitled "In Re the visitation of [Child]" it would have complied with the provisions of the GVA to the letter.

* * * * *

The Court concludes that but for the difference of a single word in the Petition filed by [Paternal Grandfather], he has complied with not only the letter of the law, but equally importantly, the spirit of the Grandparent Visitation Act. The Court therefore finds [Paternal Grandfather] does have standing to request Grandparent Visitation.

(Appellant's App. Vol. 2 at 18.)

[19] However, we disagree with the trial court's conclusion that Paternal Grandfather's petition for guardianship was actually a pre-adoption petition for grandparent visitation. Guardianship bestows far more rights on the person appointed to be guardian than the GVA gives grandparents. A guardian is "a person who is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor." Ind. Code § 29-3-1-6. In contrast, the GVA "'contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right' to direct his or her child's upbringing." *In re Visitation of H.B.*, 21 N.E.3d 867, 871 (Ind. Ct. App. 2014) (quoting *In re Visitation of M.L.B.*, 983 N.E.2d 583, 588 (Ind. 2013)).

Guardianship and grandparent visitation are two different questions, and the question of grandparent visitation was not before the trial court in the Guardianship Case.

[20] Nonetheless, in terms of equitable remedies, Paternal Grandfather asserts not allowing him to pursue a petition for grandparent visitation would be unjust. Before the trial court, he characterized Maternal Grandparents' attorney as a "sleek lawyer" who failed to notify "anybody of anything" and made "some pretty questionable representations in an adoption petition that they don't want you to look at." (Tr. Vol. 2 at 13.) He argued that if the trial court granted Maternal Grandparents' motion to dismiss, it would "give lawyers an opportunity to take advantage of people who are grandparents." (*Id.* at 10.)

[21] Paternal Grandfather contends Maternal Grandparents' conduct in pursuing the adoption estops them from challenging his standing to pursue grandparent visitation. "The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result." *Sheetz v. Sheetz*, 63 N.E.3d 1077, 1081 (Ind. Ct. App. 2016). "Equitable estoppel is available if one party, through its representations or course of conduct, knowingly misleads or induces another party to believe and act upon their conduct in good faith and without knowledge of the facts." *Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 234 (Ind. Ct. App. 2004), *trans. denied*. To successfully assert equitable estoppel, "the party claiming estoppel must (1) lack knowledge and the means of knowledge as to the facts in question, (2) rely upon the conduct of the party to be estopped, and (3)

experience a prejudicial change in position based on the conduct of the party to be estopped." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 523 (Ind. 2021). Satisfaction of the second element is two-pronged: "(1) reliance in fact, and (2) right of reliance." *Am. Family Mut. Ins. Co.*, 803 N.E.2d at 234. "The basis for equitable estoppel is fraud, either actual or constructive, on the part of the person estopped. Constructive fraud arises by operation of law from conduct that, if sanctioned by law, would secure an unconscionable advantage." *Lockett v. Planned Parenthood of Ind., Inc.*, 42 N.E.3d 119, 136 (Ind. Ct. App. 2015) (internal citation omitted), *trans. denied*.

[22] Paternal Grandfather did not know about the Adoption Case until Maternal Grandparents filed their motion to dismiss in the Guardianship Case. Maternal Grandparents did not serve Paternal Grandfather with the adoption petition or file a notice of their intention to seek to adopt Child in the Guardianship Case. They also did not otherwise inform Paternal Grandfather about their adoption petition despite the open Guardianship Case. Maternal Grandparents contend they were not required to serve Paternal Grandfather with the adoption petition,[3] and they assert Indiana Code section 31-19-19-5 prohibited them from

---

[3] Maternal Grandparents note Paternal Grandfather stated before the trial court that he was not entitled to notice of the adoption petition, and therefore, they argue he should not be allowed to now argue he was entitled to notice. However, Paternal Grandfather did argue before the trial court that he should have been informed of the adoption petition. Moreover, whether a party is entitled to notice is a legal question we review de novo. *See In re Adoption of B.C.H.*, 22 N.E.3d 580, 584 (Ind. 2014) (analyzing question of whether child's maternal grandparents were entitled to notice of stepfather's petition to adopt child de novo). Nonetheless, we need not decide that question. Even if Paternal Grandfather was not entitled to be served with the adoption petition, the parties do not dispute that he was unaware of the adoption petition until Maternal Grandparents moved to dismiss the Guardianship Case.

informing Paternal Grandfather about the Adoption Case. That statute prohibits "[a]n employer or any person administering adoption records" from "recklessly, knowingly, or intentionally" releasing confidential information related to an adoption unless release of the information is otherwise allowed by law. Ind. Code § 31-19-19-5.

However, in the words of William Shakespeare, Maternal Grandparents' arguments are "neither here nor there." *Othello*, act 4, sc. 3, l. 65. Whether a trial court possesses subject matter jurisdiction is "a threshold question concerning the trial court's power to act." *Hood's Gardens, Inc. v. Young*, 976 N.E.2d 80, 83 (Ind. Ct. App. 2012). Indiana Code section 33-28-1-6 states: "When the subject matter of a circuit court is situated in two (2) or more counties, the court that takes cognizance of the matter first shall retain the matter."[4] In *In re Marriage of Huss*, our Indiana Supreme Court explained:

> It is well settled that two courts of concurrent jurisdiction cannot deal with the same subject matter at the same time. Once jurisdiction over the parties and the subject matter has been secured, it is retained to the exclusion of other courts of equal competence until the case is resolved, and the rule applies where the subject matter before the separate courts is the same, but the actions are in different forms. Exclusive jurisdiction over a

---

[4] While this statute concerns circuit courts and the Adoption Case was filed in a superior court, Indiana Code section 33-29-1-4 provides that a standard superior court judge "has the same powers relating to the conduct of business of the court as the judge of the circuit court of the county in which the standard superior court is located[.]"

particular cause of action vests when the complaint or other equivalent pleading or document is filed.

888 N.E.2d 1238, 1241 (Ind. 2008) (holding that because the subject matter of child custody was properly before one circuit court in a dissolution of marriage action, a second circuit court was precluded from making a custody determination regarding the same child in a subsequently filed paternity suit). Here, both the Guardianship Case and the Adoption Case concerned the custody of Child, and the Guardianship Case was filed first.

[24] Maternal Grandparents did not disclose the pending Guardianship Case to the trial court in the Adoption Case. In their verified petition, Maternal Grandparents averred that "[n]o guardianship has been established." (Appellant's App. Vol. 2 at 36.) While that statement was literally true, the failure to disclose the open Guardianship Case left the trial court in the Adoption Case unaware of a significant, relevant, jurisdictional fact that it should have known. Indiana Rule of Professional Conduct 3.3(a) provides:

> A lawyer shall not knowingly:
>
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

Having filed the Guardianship Case in the Harrison Circuit Court, Paternal Grandfather was entitled to rely on these legal principles to assume that Child's custody issues would be decided in the Guardianship Case and not in another trial court. Maternal Grandparents took advantage of Paternal Grandfather's justified reliance on that assumption to file the Adoption Case. Their chicanery prevented Paternal Grandfather from contesting the adoption or seeking to have a grandparent visitation order issued. Therefore, we hold Maternal Grandparents were equitably estopped from contesting Paternal Grandfather's standing to petition for grandparent visitation, and we affirm the trial court. *See, e.g.*, *Lockett*, 42 N.E.3d at 137 (holding patient who lied about her age to abortion services provider was estopped from seeking damages from the provider for performing an abortion on her without parental consent).

## Conclusion

We conclude that Maternal Grandparents were equitably estopped from challenging Paternal Grandfather's petition for grandparent visitation. Accordingly, we affirm the decision of the trial court.

Affirmed.

Mathias, J., and Bradford, J., concur.

ATTORNEY FOR APPELLANTS

Joseph Leon Payne
Payne Law Office, LLC
Austin, Indiana

ATTORNEY FOR APPELLEE

Larry O. Wilder
Jeffersonville, Indiana

Sadie Rothrock
Certified Legal Intern
Jeffersonville, Indiana