GORRELL OARD AND CLEO HAMILTON *v.* RICHARD P. RECHTER AND WAYNE K. SOWERS, AS CO-GUARDIANS OF THE ESTATE OF RALPH J. ROGERS.

[No. 1-774A103. Filed February 6, 1975.]

167

*James Lawrence Miller*, of Indianapolis, *Len E. Bunger, Jr., Bunger, Harrell & Robertson*, of Bloomington, for appellants.

*Stephen Goldsmith, Barnes, Hickam, Pantzer & Boyd*, of Indianapolis, for appellees.

ROBERTSON, C.J.—Defendants-appellants, Oard and Hamilton, bring this appeal from a judgment granting specific performance of a purported contract for sale of real estate to plaintiffs-appellees, Rechter and Sowers, as co-guardians of the estate of Ralph Rogers.

The sole issue for review is whether a written agreement entered into by the parties embodied a purchase option capable of being specifically enforced.

We find that no option existed and accordingly reverse.

In 1954, Ralph Rogers needed approximately eleven and one-half acres of property belonging to Oard and Hamilton to complete a quarry site in Monroe County. In March of 1954, Rogers sent his agent, Sieboldt, to negotiate for the needed land.

Oard and Hamilton were willing to sell that acreage, but they were worried that the traffic and noise from the quarry operation might make it undesirable to live on the remainder

of their property. Before they would agree to sell the eleven and one-half acres that Rogers wanted, they insisted they have the right to force Rogers to purchase the remaining one-hundred and ten acres any time they should decide to sell.

The parties entered into a written contract for the sale of the eleven and one-half acres at a price of two-hundred dollars per acre. They also signed a supplemental agreement which was expressly incorporated into and made a part of the sales contract. The supplemental agreement provided for the sale of the remaining property upon the following terms and conditions.

"1. The sale and purchase price thereof is the sum of $200.00 per acre for an agreed acreage of 109.5 acres and a total sale and purchase price of $21,900.00.

2. Second party agrees to pay the purchase price herein above set out to first parties upon first parties giving to second party a sixty (60) day notice in writing by registered mail addressed to second party at his address of South Adams Street, Bloomington, Indiana, that said first parties are prepared and willing to deliver to second party their deed of conveyance containing the usual convenants of warranty. . . .

3. It is further agreed and understood that in the event that first parties shall not exercise their right to sell and convey said lands as herein above set out within a period of fifteen (15) years from this date, said second party herein shall then have the right to purchase said lands or to decline to make such purchase.

4. It is further understood and agreed that during said period of fifteen (15) years from date, that the first parties shall not sell or convey to any other person, firm or corporation said above lands described as tract 2, or any part thereof, nor shall they encumber the same without written permission of second party herein, but said first parties shall have full control of the use and occupancy of said lands and the right to sell or use any of the timber growing thereon;

5. It is further understood and agreed that second party agrees to purchase said lands at such time as first parties give notice of their desire to sell as provided above, in the condition the same shall be at the time of such notice, and with such timber and improvements, if any, as shall be on the lands at the time of said notice;"

During the course of trial, both parties agreed that they were bound to the following terms. For a period of fifteen years, Oard and Hamilton had the right, upon sixty days written notice, to force Rogers to buy the remaining one-hundred and ten acres for two hundred dollars an acre. During that fifteen year period, the land could not be sold to anyone else. Up until the sixty day notice was given, Oard and Hamilton had the right to sell or use any of the timber on the property (which was estimated to be worth $25,000-$30,000 at the time of trial).

The dispute involves the language of section 3 of the supplemental agreement. That section provides that after the end of the fifteen year period, if Oard and Hamilton had not exercised their right to sell, Robers would have the right "to purchase said lands or to decline to make such purchase".

Rechter and Sowers (as co-guardians of Rogers' estate authorized to exercise his rights under the contract) interpreted that language as giving them an absolute right to purchase the remaining one-hundred and ten acres at the end of fifteen years for two-hundred dollars per acre. Pursuant to this belief Sowers notified Oard and Hamilton by a letter dated May 16, 1969 (nine days before the end of the fifteen year period) that he would exercise that option.

Upon receipt of the letter, Oard and Hamilton went to Sowers' office and informed him that they understood section 3 to grant only a right of first refusal to Rogers and that they neither desired nor intended to sell the property for two-hundred dollars per acre.

Rechter and Sowers brought suit seeking specific performance. After a trial to the court, the trial judge found that section 3 of the supplemental agreement created an option to purchase and that Rechter and Sowers had properly exercised their rights under that option. Oard and Hamilton were ordered to convey the one-hundred and ten acres. This appeal follows.

The sole issue is whether the trial court was correct in

finding that a binding option to purchase was created in Rogers' favor.

We hold, as a matter of law, that the trial court's decision is erroneous.

As stated above, the disputed portion of the agreement is section 3, specifically the language emphasized below:

> "3. It is further agreed and understood that in the event that first parties shall not exercise their right to sell and convey said lands as hereinabove set out within a period of fifteen (15) years from this date, *said second party herein shall then have the right to purchase said lands or to decline to make such purchase.*" (Emphasis added).

Only by interpreting that language out of context, applying an extremely narrow construction to the phrase "right to purchase said lands," and ignoring the phrase "to decline to make such purchase" can section 3 be interpreted as creating a binding option to purchase. In our opinion this is an erroneous interpretation of the agreement.

When the language of section 3 is considered in light of the contract as a whole, it is clear that the language did no more than serve notice that the option to sell on the part of Oard and Hamilton was enforceable only until September 25, 1969, the end of the fifteen year period.

It is clear on the face of the supplemental agreement that the parties contemplated a fifteen year contractual relationship. During that period each had substantial rights against the other. Oard and Hamilton could force Rechter and Sowers to purchase the property, but they could not sell to anyone else during that period no matter how favorable the price. Their only possible sale was to Rechter and Sowers at a price of two-hundred dollars an acre.

The only language that speaks of the time beyond the fifteen year period is section 3, which states that after that date Rechter and Sowers have "the right to purchase said lands or to decline to make such purchase." If the words "right to purchase said lands" are held to create an option, the words "or to decline to make such

purchase" are surplusage since the right to decline to purchase is inherent in an option. *See generally,* 25 I.L.E. Sales of Realty, § 2. However, no part of a contract should be treated as surplusage if it can be given a meaning reasonably consistent with other parts of the contract. *Walb Construction Co.* v. *Chipman* (1931), 202 Ind. 434, 175 N.E. 132. When read in light of the contract as a whole that language simply meant that after fifteen years, Rechter and Sowers were no longer under the obligation to purchase upon Oard and Hamilton's written notice. They could "decline to purchase."

Interpreting section 3 as creating an option is also unreasonable in light of other portions of the contract. At present the land contains timber estimated to be worth twenty-five to thirty thousand dollars. Section 4 expressly provides that Oard and Hamilton were to have the right to sell or use all of that timber until the time they gave notice to Rechter and Sowers of their election to sell. This language was insisted upon by Oard, a sawmill operator who knew that value of that timber. Oard demanded that he have the right to sell that timber before giving up the land.

In light of section 4, it would be unreasonable to treat section 3 as creating an option that would prevent Oard from selling any of that timber and force him to convey the land with the timber for two-hundred dollars an acre.

Also, if interpreted as a binding option contract, several important terms of the agreement are missing. Nothing is said about the manner and time in which the option to purchase must be exercised, the time within which the purchase price must be paid or the time possession must be surrendered. While such terms are often supplied by an inference that the parties intended a reasonable time and manner of performance, in this case that approach would be inconsistent with the rest of the contract. Since those terms were specifically enumerated for the option to sell, it would be unreasonable to assume that the parties created a subsequent option to purchase without specifying those terms.

Moreover, Rechter and Sowers have suggested in their brief to this court that an enforceable option did not exist. Concerning the timing of their notice, they state that notice of their election to purchase had to be given before the end of the fifteen year period because section 4 prevented Oard and Hamilton from selling to anyone else only during the fifteen year period. After that time they were free to sell the property to anyone. If that reasoning is accepted, it would not be possible to find that an option existed since an option implies that the optionor will not convey to another until the option expires. *See generally*, 25 I.L.E., Sales of Realty, § 2.

An examination of the contract as a whole makes it clear that section 3 did not create a binding option, therefore, the judgment of the trial court is erroneous as a matter of law.

Judgment reversed and remanded for any further action not inconsistent with this opinion.

Lowdermilk and Lybrook, JJ., concur.