ROY J. WOODRUFF AND DELORES WOODRUFF *v.*
WILSON OIL COMPANY, INC.

[No. 3-975A188. Filed November 29, 1978. Rehearing denied January 10, 1979.]

*James F. Groves, Noell, Groves & White,* of South Bend, for appellants.

*R. Kent Rowe, Lewis C. Laderer, Jr., Kramer, Rowe, Sweeney, Butler, Simeri & Laderer,* of South Bend, for appellee.

STATON, J.—Roy and Delores Woodruff, as lessors, filed suit against the Wilson Oil Company, Inc. ("Wilson"), as lessee. The Woodruffs alleged that as the result of Wilson's negligence, a building on the leased property had been destroyed by fire. Wilson filed a motion for summary judgment contending that, by the terms of the lease, the Woodruffs were prohibited from bringing such a suit. The trial court concluded that pursuant to the terms of the lease, the Woodruffs had agreed to maintain fire insurance on the buildings for the benefit of both parties and, therefore, were compelled to seek reimbursement for any fire loss occasioned by Wilson's negligence solely from the proceeds of the insurance. Accordingly, the trial court granted a summary judgment for Wilson. In their appeal to this Court, the Woodruffs contend that the trial court erroneously interpreted the lease.

We affirm.

On June 10, 1969, the Woodruffs and Wilson entered into a lease agreement concerning certain property in LaPorte County, Indiana. The property was leased by Wilson for the purpose of carrying on the business of a petroleum bulk storage plant.

The relevant provisions of the lease read as follows:

"6.   *Lessor's covenants.* Lessors covenant and agree with the Lessee as follows:

\* \* \*

"c.   The Lessors agree to pay all real estate taxes and the costs of fire and extended coverage insurance on the premise during the term of this lease.

\* \* \*

"7.   Fire and Other Casualty. Should the buildings and other improvements upon the premises be destroyed by fire or by the elements, the same shall be repaired as speedily as possible at the expense of the Lessors and if such destruction interferes with the Lessee's ability to use the premises, then a just and proportionate

part of the rent shall be abated until the premises have been put in complete repair; providing that, if said destruction shall occur within the last year of this lease, and at the time of such destruction, the Lessee has not exercised its option to purchase said real estate, the Lessee shall be given a period of thirty (30) days from the date of the destruction in which to exercise the same. If the Lessee exercises said option, the Lessors shall either proceed to restore the buildings providing as much floor space therein as is contained in the said demised premises or shall convert the insurance proceeds to the Lessee for the purpose of such construction. In the event the Lessee does not exercise the option within the said thirty (30) day period, then the Lessors may, at their own expense, proceed to restore the buildings or refuse to do so, at their election, and in each such event, the rent shall abate until the buildings are restored or, if they are not restored, this Lease shall thereupon terminate.

In this regard, the Lessor agrees, during the term of this lease, to keep in existence during the term of this lease such fire and extended coverage insurance in such amount as will insure the replacement of said buildings and improvements."

We note initially that the Woodruffs advance several arguments which are predicated on the proposition that we are dealing with an exculpatory clause. These arguments, although well-researched and well-reasoned, are inapposite. Wilson is not proceeding on the theory that the lease provisions exculpated it from liability for its negligence. Instead, Wilson maintains that the provisions impose upon the Woodruffs the obligation to insure it against loss from such liability. Thus, Wilson continues, any liability it might have for negligent use of the premises would be offset by the Woodruffs' liability for breach of the lease. *See Fred A. Chapin Lumber Co. v. Lumber Bargains, Inc.* (1961), 189 Cal. App.2d 613, 11 Cal.Rptr. 634. Accordingly, we will refrain from discussing the exculpatory-oriented arguments.

The Woodruffs concede that they were required to maintain fire insurance on the leased premises. They further concede that they were obligated to maintain policies on the buildings and other improvements in such amounts as would insure their replacement. The question we must resolve is this: For whose benefit was the insurance to be maintained?

A lessor always has the right to maintain insurance on the leased property for his own benefit and protection. If the insurance provisions in the case at bar are interpreted as only requiring the Woodruffs to maintain insurance for their own benefit, the provisions are mere surplusage and serve no purpose. It is a general rule of construction that no part of a contract should be treated as surplusage if it can be given a meaning reasonably consistent with the other parts of the contract. *Oard v. Rechter* (1975), 163 Ind.App. 166, 322 N.E.2d 392. Wilson argues that the provisions can be given a reasonable and consistent interpretation; namely, to require the Woodruffs to maintain insurance for the benefit of both parties. If the Woodruffs could not counter with an alternative interpretation, we would thus have to accept Wilson's contention.

The Woodruffs, however, direct our attention to Paragraph 7 of the lease, wherein they are obligated, in the event of damage by fire, to repair and restore the buildings at their own expense. The parties apparently anticipated that Wilson might desire to continue its business at the same location, even though fire damage might cause a temporary cessation or interruption of its business. Consequently, it would be of great importance to have the Woodruffs not only obligated to restore but financially able to restore. Thus, the Woodruffs argue, the insurance provisions were inserted to assure the availability of money with which the restoration might be accomplished.

If, however, as the Woodruffs contend, the purpose of the insurance requirement was merely to assure Wilson that funds would be available for reconstruction, there would be no need to include the additional provision which is found in Paragraph 6(c). The interpretation of the lease advanced by the Woodruffs would thus relegate Paragraph 6(c) to the category of surplusage and, in doing so, would violate the very same rule of construction which it sought to avoid.

Nor are we persuaded by the Woodruffs' contention that there must be an exception for damage by fire in the redelivery clause before a lease can be construed as requiring a lessor to obtain insurance for the benefit of the lessee. Such a provision would, in fact, be inconsistent with the provision in Paragraph 7 mandating restoration by the Woodruffs at their own expense.

We conclude, therefore, that Paragraph 6(c) imposes upon the Woodruffs the obligation to obtain insurance for the benefit of both parties and in the amount designated in Paragraph 7. Having so concluded, we find no error.

The judgment of this trial court is affirmed.

Robertson, J., (by designation) concurs;

Garrard, P.J., concurs.

NOTE—Reported at 382 N.E.2d 1009.