**FARM BUREAU INSURANCE COMPANY, Appellant–Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee–Defendant.**

**No. 42A05–0108–CV–00350.**

Court of Appeals of Indiana.

March 27, 2002.

David L. Clark, Clark & Steedman, Evansville, IN, Attorney for Appellant.

Patricia K. Woodring, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, LLP, Evansville, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Farm Bureau Insurance Company ("Farm Bureau") appeals from the trial court's grant of summary judgment to Allstate Insurance Company ("Allstate") on Farm Bureau's complaint for reimbursement of insurance proceeds advanced by Farm Bureau to its insured on behalf of Allstate. We reverse.

### Issue

Farm Bureau raises a single issue for our review, which we restate as follows: whether the trial court properly determined that the two-year personal injury statute of limitations applied to Farm Bureau's action against Allstate for reimbursement of an advance payment Farm Bureau made to its insured on behalf of Allstate and Allstate's insured.

### Facts and Procedural History

On January 18, 1996, Robert McCracken and Terry Bealmear were involved in an automobile accident. McCracken was covered by a policy of insurance issued by Farm Bureau, which included provisions for underinsured motorist coverage of $100,000. Bealmear was covered by a policy of insurance issued by Allstate which provided in part a $50,000 per person limit for bodily injury claims. McCracken made a claim for bodily injury against Bealmear to Allstate and a claim for underinsured motorist benefits to Farm Bureau.

On approximately June 19, 1997, Allstate offered to pay to McCracken its policy limits of $50,000. Approximately one month later, Allstate advised Farm Bureau of its offer to McCracken and asked if Farm Bureau would "advance [the] offer to Mr. McCracken." Appellant's Appendix at 23. Farm Bureau did in fact advance the $50,000 to McCracken. Farm Bureau paid an additional $14,582 to McCracken under his underinsured coverage. Farm

Bureau then sought reimbursement from Allstate of its advance payment of the $50,000, but Allstate failed to pay.

Farm Bureau then initiated a lawsuit against Bealmear by filing a complaint on January 22, 1998, alleging that Farm Bureau was subrogated against Bealmear in the amount of $64,582, the total payments made to McCracken including the $50,000 advance of Allstate's offer, and was entitled to payment. Bealmear filed a motion to dismiss, alleging that Farm Bureau stood in the shoes of its insured in seeking reimbursement from Allstate and was therefore bound by the two year statute of limitations applicable to personal injury actions. Farm Bureau had filed its complaint two days after the two year statute of limitations ran.[1] Farm Bureau filed a motion to add Allstate as a party defendant and amend its complaint. The trial court granted Bealmear's motion to dismiss and denied Farm Bureau's motion. On a motion to correct errors, however, the trial court allowed Farm Bureau's motion to add Allstate as a party defendant. Farm Bureau then filed an amended complaint naming only Allstate as a defendant and seeking specific performance of reimbursement of the $50,000 advance. Both parties filed a motion for summary judgment with supporting materials. The trial court granted Allstate's motion and denied Farm Bureau's. This appeal ensued. Additional facts will be provided as necessary.

*Discussion and Decision*

Summary Judgment

I. Standard of Review

■ Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "des-

ignated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind.Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

■ The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct.App. 1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving par-

---

1. As the trial court explained in its order on Allstate's Motion to Dismiss, January 18, 1998, the two year anniversary of the accident, was a Sunday, and was followed by a holiday. Therefore, if the complaint must have been filed within two years, it should have been filed on the next business day, January 20, 1998.

ty to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang*, 714 N.E.2d at 1216. A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

■ The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Metal Working Lubricants Co. v. Indianapolis Water Co.*, 746 N.E.2d 352, 355 (Ind.Ct.App.2001)

### II. Subrogation

The correspondence between the parties transpired as follows: McCracken sent a letter to Marge Elliott at Allstate on June 5, 1997, informing her that he was seeking settlement of $210,000 for his damages from the collision, and without satisfactory payment of the settlement, he would take legal action. Ms. Elliott then sent the following letter to McCracken on June 19, 1997:

> As we discussed over the phone, I have extended a $50,000 offer of settlement to you for your bodily injury claim. This offer is the limits under our insured's bodily injury coverage. I have enclosed a copy of our insured's coverage to support the amount of the limits.
>
> Please show this letter to your underinsured motorist carrier. They have thirty days to respond as to whether they will advance you our offer so they may still pursue our insured's assets if they also make a payout to you or whether you may just settle direct [sic] with us and then release our insured also.
>
> I will await you [sic] or your insurance company's response. . . .

Appellant's App. at 22. On July 24, 1997, Ms. Elliott sent a letter to Mark Fehribach at Farm Bureau, advising him as follows:

> I understand you had an underinsured motorist claim pending with Mr. McCracken.
>
> This letter is to inform you that I have tendered the policy limits to Mr. McCracken of $50,000 to settle his bodily injury claim with us.
>
> * * *
>
> Also, please inform me within 30 days whether you will advance our offer to Mr. McCracken or whether we may settle with him direct [sic] and therefore, release our insured.

Appellant's App. at 23. On approximately the same day, Ms. Elliott received a copy of the following correspondence from Mr. Fehribach to McCracken, written July 21, 1997:

> In accordance with statute (I.C.27–7–5–6), we agreed to make payment as an Underinsured Motorist claim in the amount of $50,000.00, as per the Allstate Insurance Company offer of settlement of their Bodily Injury limits.
>
> We wish to assert our full rights of subrogation under the statute against Allstate Insurance group and/or Terry L. Bealmear. I am enclosing a check for that amount along with this letter. . . .

Appellant's App. at 24. According to Mr. Fehribach's affidavit, "Farm Bureau settled its underinsured motorist claim with th[e] McCracken's [sic] on January 15, 1998. I called Marge Elliott at Allstate on January 19, 1998, to advise her of the settlement and to r[e]quest reimbursement of the $50,000 Farm Bureau had advanced. My call was never returned." Appellant's App. at 26.

Indiana Code section 27–7–5–6, the statute on which the parties premised their

actions in this case, reads, in pertinent part, as follows:

(a) The policy or endorsement affording the coverage specified in this chapter may also provide that payment to any person of sums as damages under such coverage shall operate to subrogate the insurer to any cause of action in tort which such person may have against any other person or organization legally responsible for the bodily injury or death, or property damage, because of which such payment is made. The insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage, for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction.

(b) An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

(1) the insurer has been provided with a written notice that:

(A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and

(B) includes a certification of the liability coverage limits of the underinsured motorist; and

(2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insur-

er receives the notice described in subdivision (1).

However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

Ind.Code § 27–7–5–6(a), (b). Pursuant to this section, an underinsured motorist carrier is required, upon proper notice, to advance the tentative settlement amount to the insured in order to preserve its subrogation rights against the underinsured motorist. *Ansert Mechanical Contractors, Inc. v. Ansert,* 690 N.E.2d 305, 310 n. 1 (Ind.Ct.App.1997).

 Subrogation has been defined as "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." Black's Law Dictionary 1427 (6th Ed.1990). *See also State v. Cowdell,* 421 N.E.2d 667, 671 (Ind.Ct.App.1981) ("The right of subrogation has consistently been defined as follows: 'The right of subrogation is not founded upon contract, expressed or implied, but upon principles of equity and justice, and includes every instance in which one party, not a mere volunteer, pays a debt for another, primarily liable, and which, in good conscience, should have been paid by the latter.'" (Quoting *Home Owners' Loan Corp. v. Henson,* 217 Ind. 554, 561, 29 N.E.2d 873, 875 (1940))). When an insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had. *United*

*Farm Bureau Mut. Ins. Co. v. Owen,* 660 N.E.2d 616, 619 (Ind.Ct.App.1996).

■ In accordance with section 27–7–6–5, Farm Bureau was provided with a written notice of the existence of a bona fide offer of settlement between McCracken and Bealmear through Bealmear's insurer, which notice included a certification of Bealmear's liability coverage limits. Because Farm Bureau advanced payment to McCracken in the amount of the offer of settlement, Farm Bureau had "full rights of subrogation" pursuant to Indiana Code section 27–7–5–6(b) against Bealmear, the underinsured motorist. Accordingly, Farm Bureau acquired only those rights which McCracken had against Bealmear; that is, it acquired the right to pursue against Bealmear a tort action for damages caused by the collision, an action governed by a two-year statute of limitations. This does not end our inquiry, however; Farm Bureau's complaint against Bealmer was dismissed as untimely, and neither Farm Bureau nor Allstate dispute this result. Rather, they dispute the propriety and timeliness of the action Farm Bureau took next: suing Allstate directly for reimbursement of the advance.

### III. Promissory Estoppel

■ Merely because Indiana Code section 25–7–5–6 governs Farm Bureau's subrogation rights and dictates that as to Bealmer, Farm Bureau stands in McCracken's shoes and is bound by the two-year statute of limitations, does not also necessarily mean that the statute governs the relationship between Farm Bureau and Allstate.

■ After its complaint against Bealmear was properly dismissed as untimely, Farm Bureau sought relief as against Allstate. McCracken had no cause of action against Allstate; therefore, in prosecuting this action, Farm Bureau is no longer standing in McCracken's shoes, but rather is representing its own interests. Allstate's obligation to reimburse Farm Bureau for advancing its offer can be enforced under the doctrine of promissory estoppel. Although variously defined, "estoppel" is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. *Brown v. Branch,* 758 N.E.2d 48, 51–52 (Ind.2001). The doctrine of promissory estoppel is applicable where there is: "(1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character, (3) which does, in fact, induce such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise." *Tincher v. Greencastle Federal Sav. Bank,* 580 N.E.2d 268, 272 (Ind. Ct.App.1991).

Farm Bureau advanced Allstate's offer to McCracken per Allstate's request that it do so. Allstate's settlement offer constituted the "promise" in this case; the promise being that if Farm Bureau advanced the funds and preserved its subrogation rights pursuant to the statute, Allstate would repay the advanced funds to Farm Bureau when the matter was fully settled. Farm Bureau relied upon the promise of reimbursement and did, in fact, advance the funds. To allow Allstate to escape its obligation to reimburse Farm Bureau by the unfortunate coincidence of the timing of Farm Bureau's settlement with its own insured would be unjust in a situation where reimbursement was clearly contemplated and relied upon by all parties at the outset. Moreover, to allow Allstate to escape reimbursement in this case could lead in the future to intentional manipulation of the timing of making offers of settlement by the insurer of an underinsured motorist such that the insur-

er won't have to reimburse the advance of its offer. Because the correspondence between Allstate, Farm Bureau and McCracken indicated that Farm Bureau would advance Allstate's settlement to McCracken until such time as Farm Bureau settled with McCracken and could be reimbursed by Allstate, Allstate is estopped from claiming that Farm Bureau's request for reimbursement came too late. To hold otherwise would result in a windfall to Allstate to which it was not entitled.

As there is no genuine issue as to the material facts that Allstate induced Farm Bureau to advance its settlement offer, that Farm Bureau did in fact advance the money, and that Allstate thereafter refused to reimburse the money, the trial court erred in granting Allstate's motion for summary judgment and denying Farm Bureau's motion. We therefore reverse the trial court's order granting summary judgment to Allstate and remand with instructions for the trial court to enter summary judgment for Farm Bureau in the amount of $50,000.

### Conclusion

The trial court erred in granting summary judgment to Allstate. Farm Bureau is entitled to relief under a theory of promissory estoppel, notwithstanding the applicable statute of limitations. Accordingly, the judgment of the trial court is reversed and this cause is remanded for the trial court to enter the appropriate summary judgment for Farm Bureau.

Reversed and remanded.

KIRSCH, J., and SULLIVAN, J., concur.