FILED

Dec 28 2018, 7:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Thomas J. Jarzyniecki, Jr.
Jennifer M. Van Dame
Kightlinger & Gray, LLP
Indianapolis, Indiana

Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Catherine Siebecker
Doug Fisher
Law Offices
The Cincinnati Insurance
Company
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Youell and
Best One Giant Tire, Inc.,

*Appellants-Defendants,*

v.

The Cincinnati Insurance
Company a/s/o Greg Dotson,

*Appellee-Plaintiff*

December 28, 2018

Court of Appeals Case No.
18A-CT-1466

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1708-CT-30209

**Vaidik, Chief Judge.**

# Case Summary

[1] A landlord and a tenant entered into a commercial lease that provided that the landlord would insure the building and the tenant would insure its personal property inside the building. When the property was later damaged by fire, the landlord's insurance covered the loss. The landlord's insurer later filed a subrogation action against the tenant to recover the amount paid. The tenant filed a motion for judgment on the pleadings, arguing that the landlord's agreement to obtain property insurance was an agreement to provide both parties with the benefits of insurance and expressly allocated the risk of loss in case of fire to insurance, thereby barring a subrogation action as a matter of law. The trial court denied the motion, and the tenant now appeals. We reverse and remand.

# Facts and Procedural History

[2] In 2013, Greg Dotson ("Landlord") leased a commercial building on West Washington Street in Indianapolis to Robert Youell and Best One Giant Tire, Inc. (referred to collectively as "Tenant"). The Commercial Lease Agreement addressed insurance as follows:

> 8. Insurance
>
> A. If the Leased Premises or any other party [sic] of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such

damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. **Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.**

C. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least [ten] (10) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

Appellants' App. Vol. II p. 15 (emphasis added). In accordance with the lease, Landlord maintained property insurance on the building through a policy with The Cincinnati Insurance Company (CIC).

[3]     On August 8, 2015, a fire occurred at the building.  Pursuant to Landlord's insurance policy, CIC paid Landlord $227,653 for damages to the building.  In August 2017, CIC, as subrogee of Landlord, filed a complaint against Tenant to recover that amount.  CIC attached the Commercial Lease Agreement to its complaint.

[4]     Thereafter, Tenant filed a motion for judgment on the pleadings, arguing that CIC had no right to pursue the subrogation claim because Landlord's agreement to provide property insurance was an agreement to provide both parties with the benefits of insurance.  The trial court denied Tenant's motion.  Appellants' App. Vol. II p. 9.

[5]     At Tenant's request, the trial court certified its order for interlocutory appeal, and this Court accepted jurisdiction of the appeal.

# Discussion and Decision

[6]     Tenant contends that the trial court should have granted its motion for judgment on the pleadings.  According to Indiana Trial Rule 12(C), after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  A written instrument attached to a pleading is considered a part of that pleading.  Ind. Trial Rule 10(C). A motion for judgment on the pleadings is typically directed toward a determination of the substantive merits of the controversy.  *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 486 (Ind. Ct. App. 2017).  Such motions

should be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.*; *see also ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (judgment on the pleadings should be granted only "where it is clear from the face of the pleadings that one party is entitled to prevail as a matter of law"). We review the trial court's ruling on such motions de novo. *ESPN*, 62 N.E.3d at 1195.

[7] In addition, a lease is construed in the same manner as any other contract. *T-3 Martinsville, LLC v. US Holding, LLC*, 911 N.E.2d 100, 111 (Ind. Ct. App. 2009), *aff'd on reh'g*, *trans. denied*. When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. *Id.* First, we must determine whether the language of the contract is ambiguous. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Id.* If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. *Id.* If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the fact-finder. *Id.*

[8] Tenant asserts that *Morsches Lumber, Inc. v. Probst*, 180 Ind. App. 202, 388 N.E.2d 284 (Ind. Ct. App. 1979), is controlling here. In that case, the parties entered into a contract for the construction of a pole barn. According to the contract, the landowner was required to obtain property insurance for fire and windstorm damage and the builder was required to obtain general liability insurance. When a windstorm later destroyed the barn during construction, the

landowner's insurance covered only 75% of the loss. The landowner then filed suit against the builder, alleging that the builder's negligence was the proximate cause of the barn's destruction. The builder responded that regardless of any negligence on its part, neither the landowner nor his insurer as subrogee could bring an action for a loss that the parties agreed would be allocated to insurance. We agreed with the builder, reasoning:

> [A]n agreement to insure is an agreement to provide both parties with the benefits of insurance. Individuals understand that insurance will protect them against the consequences of their own negligence and more than likely assume that if one who is a party to a contract agrees as part of his or its duties to provide insurance, that the insurance will protect both of them regardless of the cause of the loss (excepting, of course, wanton and willful acts). If that were not their intent, each would provide his or its own insurance protection and there would be no need for the contract to place the duty on one of them.

*Id.* at 287. Accordingly, we held that the landowner was "limited in his recovery to the proceeds of the insurance policy. The fact that he failed to take out a policy sufficient to cover the cost of the undertaking is a cost he will have to bear." *Id.*; *see also Woodruff v. Wilson Oil Co.*, 178 Ind. App. 428, 382 N.E.2d 1009 (1978) (holding that a contract requiring the lessors to obtain fire insurance for the leased property was for the benefit of both the lessors and the lessee and therefore the lessors were limited in recovery to the insurance proceeds).

[9] We agree with Tenant that *Morsches Lumber* is controlling here. Like the contract in *Morsches Lumber*, here the Commercial Lease Agreement unambiguously provides that Landlord would insure the building and Tenant would insure its personal property inside the building.[1] Appellants' App. Vol. II p. 33. Landlord and Tenant's agreement to insure was thus an agreement to provide both parties with the benefits of the insurance and expressly allocated the risk of loss in case of fire to insurance. *See Morsches Lumber*, 388 N.E.2d at 287 ("With agreements to insure, the risk of loss is not intended to be shifted to one of the parties; it is intended to be shifted to an insurance company in return for a premium payment. Neither party intends to assume a potential liability; rather both are demonstrating 'normal' business foresight in avoiding liability and allocating it to an insurer."). And just like the landowner in *Morsches Lumber*, Landlord is limited in its recovery to the insurance proceeds. And because CIC stands in the shoes of Landlord and takes no rights other than those that Landlord had, CIC has no subrogation rights against Tenant. *Ind. Erectors, Inc. v. Trs. of Ind. Univ.*, 686 N.E.2d 878, 880 (Ind. Ct. App. 1997) ("[T]he party who agreed to purchase insurance has no cause of action against the party for whose benefit the insurance was intended regardless of the fault of this intended insured. And, as the rights of a subrogated insurer can rise no

---

[1] Landlord asserts that the lease is ambiguous because (1) the lease did not specify the amount of property insurance to be obtained (but rather left it to the discretion of Landlord) and (2) the lease did not explicitly rule out subrogation. But as Tenant points out, the contract in *Morsches Lumber* neither specified the amount of property insurance to be obtained nor explicitly ruled out subrogation. The lease is not ambiguous for these reasons.

higher than the rights of its insured, the first party's insurance carrier has no subrogation cause of action against the intended insured." (citations omitted)), *reh'g denied*; *Farm Bureau Ins. Co. v. Allstate Ins. Co.*, 765 N.E.2d 651, 656-57 (Ind. Ct. App. 2002), *aff'd on reh'g, trans. denied*.

[10]     Despite Tenant's explicit reliance on *Morsches Lumber* in its brief, CIC does not attempt to distinguish it, or even cite it, in its brief. CIC, however, relies on *LBM Realty, LLC v. Mannia*, 19 N.E.3d 379 (Ind. Ct. App. 2014). In *LBM Realty*, the tenant entered into a lease with the landlord to rent a unit in an apartment building. The lease was "silent" as to the landlord's obligation to maintain property insurance and only recommended that the tenant obtain renter's insurance. *Id.* at 381. After a fire caused nearly $750,000 in damage to the apartment building, the landlord's insurer filed negligence and breach-of-contract claims against the tenant for causing the fire. In determining whether the landlord's insurer could pursue the claims against the tenant, we considered three alternative approaches to subrogation claims brought against tenants by insurers of landlords: (1) the no-subrogation approach; (2) the pro-subrogation approach; and (3) the case-by-case approach. After considering each alternative, we adopted the case-by-case approach:

> Having considered the range of possible approaches, we conclude that Indiana should hereby adopt the largely case-by-case approach, finding that a tenant's liability to the landlord's insurer for damage-causing negligence depends on the reasonable expectations of the parties to the lease as ascertained from the lease as a whole and any other admissible evidence. Although the case-by-case approach is said to provide less predictability

than either the pro- or no-subrogation approaches, we find that this approach best effectuates the intent of the parties by simply enforcing the terms of their lease.

*Id.* at 393-94 (citations omitted).

[11] *LBM Realty* is distinguishable from this case. In *LBM Realty*, the lease did not require the landlord to maintain property insurance and only recommended that the tenant obtain renter's insurance; as a result, the parties' expectations with respect to liability for damage to the leased premises was unknown. Here, however, the Commercial Lease Agreement unambiguously provides that Landlord would insure the building. Accordingly, the test set forth in *LBM Realty* does not apply to this case; rather, *Morsches Lumber* controls. We therefore reverse and remand with instructions for the trial court to grant Tenant's motion for judgment on the pleadings.

[12] Reversed and remanded.

Riley, J., and Kirsch, J., concur.