


FILED

Apr 28 2025, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Shelter Mutual Insurance Company,

*Appellant*

v.

State Farm Mutual Automobile Insurance Company,

*Appellee*

---

April 28, 2025

Court of Appeals Case No.
24A-PL-2863

Appeal from the Bartholomew Superior Court

The Honorable Jonathan L. Rohde, Judge

Trial Court Cause No.
03D02-2309-PL-4818

---

**Opinion by Judge Brown**
Chief Judge Altice and Judge Tavitas concur.

**Brown, Judge.**

[1] Shelter Mutual Insurance Company ("Shelter") appeals the trial court's entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") on Shelter's claim for reimbursement of monies Shelter advanced to its insured following a policy limit settlement offer made by State Farm. We affirm.

## Facts and Procedural History

[2] On September 6, 2018, Lee Naylor was involved in a motor vehicle accident with Mary Siener in Bartholomew County. On that date, there was in effect a Policy of Motor Vehicle Insurance issued by Shelter to Naylor, Policy No. 14-1-8667722-7 (the "Shelter Policy"), that included underinsured motorist ("UIM") coverage with an "each person" limit of $100,000. Appellant's Appendix Volume II at 8. Also in effect was a Policy of Motor Vehicle Insurance issued by State Farm to Siener (the "State Farm Policy") which included liability coverage with an "each person" limit for bodily injury of $50,000. *Id*. at 72.

[3] On January 18, 2019, Naylor filed a complaint against Siener and Shelter in the Bartholomew Circuit Court under Cause No. 3D02-1901-CT-394 ("Cause No. 394") seeking damages arising out of the accident. Naylor alleged that Siener was negligent in causing the motor vehicle accident and sought damages from her to compensate him for his injuries, and he also sought recovery of UIM benefits under the Shelter policy.

[4]    During the course of Cause No. 394, Naylor's counsel made a demand for the $50,000 liability coverage limit under the State Farm Policy to resolve Naylor's claim against Siener. On March 29, 2022, State Farm's counsel, John Richards ("Attorney Richards"), sent an email to Naylor's counsel advising him that "State Farm agrees to pay the liability limit of $50,000 in exchange for release of Mary Siener." *Id.* at 12. The email further advised, "This shall also confirm that you have agreed to make no mention of Shelter at trial in the event that Shelter advances the sum of $50,000 and the case proceeds to trial against Ms. Siener at some point." *Id.* Attorney Richards attached to his email a copy of the confirmation of coverage available to Siener under the State Farm Policy. Shelter's counsel, Douglas Hoffman ("Attorney Hoffman"), was copied on the email. On the same date, Naylor's counsel prepared and sent a letter to Attorney Hoffman notifying Shelter of State Farm's offer of its policy limit and Naylor's "intent to settle for the limits of this policy within the next thirty (30) days." *Id.* at 14. The letter went on to advise Shelter, "If you do not wish us to make such settlement, we request that you advance a payment equal to the policy limits offered prior to that time. If you do not do that within the next thirty (30) days, we shall conclude our settlement. This notification is given to you pursuant to I.C. 27-7-5-6." *Id.* By letter dated April 13, 2022, Attorney Hoffman responded to Naylor's counsel, stating in relevant part, "Please be advised that [Shelter], your client's UIM carrier, will exercise advancement rights under Indiana law, and will substitute its $50,000.00 for that of [Siener's] auto carrier, State Farm Insurance." *Id.* at 15. Attorney Richards was copied on the letter.

[5] Cause No. 394 proceeded to trial on February 14, 2023, at the conclusion of which the jury returned a verdict in favor of Naylor and against Siener in the amount of $14,000. Thereafter, Attorney Hoffman sent a demand letter to Attorney Richards requesting that "State Farm repay the $50,000 which Shelter advanced on behalf of State Farm." *Id*. at 16. The letter noted that the "jury verdict of $14,000 in favor of [Naylor] did not reach Shelter's UIM exposure, and was well-below the $50,000 policy limits settlement reached between [Siener]/State Farm and [Naylor]," Shelter "advanced State Farm's $50,000 pursuant to Indiana law in order to maintain subrogation rights and secure a human defendant at trial," and that "advancement was made after State Farm offered [Siener's] policy limits of $50,000 and [Naylor] accepted those limits on the eve of an earlier trial setting in 2022." *Id*. The letter further acknowledged that "Shelter's advancement of funds was made pursuant to IC 27-7-5-6[.]" *Id*.

[6] On September 15, 2023, Shelter filed its complaint against State Farm alleging that "State Farm has failed and refused to repay the $50,000 advanced by Shelter to its insured in reliance upon the policy limits offer made by State Farm" and that Shelter "is entitled to recover the $50,000 it advanced to its insured (Naylor) in reliance upon State Farm's policy limits offer and agreement with Naylor." *Id*. at 10-11. State Farm filed its answer on October 13, 2023. On October 26, 2023, State Farm reimbursed Shelter $14,000 for the amount of the judgment entered against Siener.

[7] On May 3, 2024, Shelter filed a motion for summary judgment, a memorandum in support of summary judgment, and its designation of

evidence. Shelter alleged that "there exists no genuine issue of material fact and Shelter is entitled to judgment as a matter of law" because "[u]nder the doctrine of promissory estoppel, State Farm is obligated to reimburse Shelter for those funds it advanced in reliance upon State Farm's offer." *Id*. at 19. Shelter asserted that, "State Farm made a promise to pay the $50,000 which was relied upon by Shelter to its detriment" and "[i]njustice can only be avoided by enforcing State Farm's promise and requiring it to reimburse Shelter for the $50,000 it advanced to its insured based on Sta[t]e Farm's offer." *Id*. at 26.

[8] On July 2, 2024, State Farm filed its reply as well as a cross-motion for summary judgment, memorandum, and designation of evidence. State Farm alleged that "there are no material issues of fact and [it] is entitled to judgment as a matter of law" because Shelter's "demand to be reimbursed the full amount of its advance payment . . . is contrary to Ind. Code § 27-7-5-6 which provides that Shelter's right of subrogation . . . is limited to the proceeds of the judgment against State Farm's insured, [Siener]" and further that the "evidence does not support the elements of promissory estoppel." *Id*. at 79-81. Shelter filed its response on July 29, 2024.

[9] On October 25, 2024, the trial court held a hearing on the cross-motions for summary judgment. That same date, the court issued its order granting State Farm's motion and denying Shelter's motion.

## Discussion

[10] Shelter contends that "the undisputed evidence designated to the trial court established that State Farm made a promise in the form of its policy limits settlement offer to Shelter's insured, Naylor, which was made with a reasonable expectation that Shelter would rely on that offer by advancing the amount of that offer to its insured pursuant to the provisions of Ind. Code § 27-7-5-6." Appellant's Brief at 9. It argues, "[t]hat promise did, in fact, induce Shelter to rely thereon by advancing the amount of that offer to Naylor" and "[i]njustice can only be avoided by this Court's enforcement of State Farm's promise to pay." *Id.* Shelter argues that this Court's opinion in *Farm Bureau Ins. Co. v. Allstate Ins. Co.*, 765 N.E.2d 651 (Ind. Ct. App. 2002), *aff'd on reh'g*, 770 N.E.2d 859, *trans. denied*, compels entry of summary judgment in its favor.

[11] State Farm asserts that "Shelter's demand to be reimbursed the full amount of its advance payment to its insured, Lee Naylor, is contrary to Ind. Code § 27-7-5-6" and that Shelter's right of subrogation "is limited to the proceeds of the judgment against State Farm's insured . . . which was $14,000." Appellee's Brief at 11. State Farm further argues that the "evidence does not support the elements of promissory estoppel" and that the "issue addressed and decided by the Court in [*Farm Bureau*], and the facts of that matter, are readily distinguishable" and "should not be extended beyond its supporting rationale[.]" *Id.* at 12. State Farm contends that the trial court properly denied Shelter's motion and entered summary judgment in favor of State Farm.

[12] Our standard of review in this regard is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). Our review is de novo, drawing all reasonable inferences from the evidence in favor of the nonmovant. *Ind. Dep't of Ins. v. Doe*, 247 N.E.3d 1204, 1210 (Ind. 2024) (citing *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 designated materials. *Catt v. Bd. of Commr's of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). Summary judgment "is a desirable tool to allow the trial court to dispose of cases where only legal issues exist." *Hughley*, 15 N.E.3d at 1003.

[13] The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Sterling Commercial Credit-Mich., LLC v. Hammert's Iron Works, Inc.*, 998 N.E.2d 752, 756 (Ind. Ct. App. 2013). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* The party appealing the trial court's summary judgment determination bears the burden of persuading the appellate court the ruling was erroneous. *Ryan v. TCI Architects/Eng'rs/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017).

[14] We begin by briefly discussing the doctrine underlying the parties' actions in this case. Subrogation is an equitable doctrine long recognized in Indiana, the purpose of which is to prevent unjust enrichment. *Wirth v. Am. Family Mut. Ins.*

*Co.*, 950 N.E.2d 1214, 1216 (Ind. Ct. App. 2011). "It applies whenever a party, not acting as a volunteer, pays the debt of a third party that, in good conscience, should have been paid by the one primarily liable." *Id*. In the insurance context, subrogation has been defined as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Subrogation*, BLACK'S LAW DICTIONARY (12th ed. 2024). When an insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had. *United Farm Bureau Mut. Ins. Co. v. Owen*, 660 N.E.2d 616, 619 (Ind. Ct. App. 1996).

[15] Although subrogation is a creature of equity, the Legislature has enacted a statute specifically addressing insurance subrogation in the context of UIM coverage. That statute, which is at the center of Shelter's decision to advance State Farm's liability coverage limits to Naylor, Ind. Code § 27-7-5-6, provides in relevant part:

> (a) The policy or endorsement affording the [UIM] coverage specified in this chapter may also provide that payment to any person of sums as damages under such coverage *shall operate to subrogate the insurer to any cause of action in tort* which such person may have against any other person or organization legally responsible for the bodily injury or death, or property damage, because of which such payment is made. *The insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization*

*legally responsible for said bodily injury or death, or property damage, for which payment is made by the insurer.* Such insurer may enforce such rights in its own name or in the name of the person to whom payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction.

(b) An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

> (1) the insurer has been provided with a written notice that:
>
>> (A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and
>>
>> (B) includes a certification of the liability coverage limits of the underinsured motorist; and
>
> (2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).

However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

(emphases added). Accordingly, a UIM carrier "is required, upon proper notice, to advance the tentative settlement amount to the insured in order to preserve its subrogation rights against the underinsured motorist." *Farm Bureau*, 765 N.E.2d at 656 (citing *Ansert Mechanical Contrs., Inc. v. Ansert*, 690 N.E.2d 305, 310 n.1 (Ind. Ct. App. 1997)).

[16]     Thus, our legislature has provided that in the case of a settlement offer from an underinsured motorist, an insured protects his insurer's subrogation rights by providing written notice that informs the insurer of the offer and includes a certification of the coverage limits of the underinsured motorist. The insurer then has thirty days after the receipt of that notice to advance payment to the insured in an amount equal to the settlement offer. If the insurer fails to advance such payment within the thirty-day period, the insurer forfeits its right of subrogation against the underinsured motorist.

[17]     Here, Naylor protected Shelter's subrogation rights by providing written notice informing Shelter of State Farm's policy-limits settlement offer and including a certification of coverage. Within thirty days after receipt of the notice, Shelter advanced payment to Naylor in an amount equal to the settlement offer in order to reserve its subrogation rights regarding the eventual proceeds of a trial or future settlement with Siener. Accordingly, there is no question that Shelter did exactly what was required to maintain its full rights of subrogation against Siener. However, the question remains, what are these "full rights of subrogation?"

[18]     As the statutory language makes clear, the advance payment "shall operate to subrogate the insurer to any cause of action in tort" and "the insurer shall be subrogated, to the extent of such payment, *to the proceeds of any settlement or judgment* that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage, for which payment is made by the

insurer." Ind. Code § 27-7-5-6 (a) (emphasis added). Based upon this language, we agree with State Farm that Shelter's subrogation rights that were reserved at the time it advanced the $50,000 are limited, "to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person[.]" Ind. Code § 27-7-5-6.[1] Naylor's total loss, as determined by a finder of fact at trial, was $14,000. Thus, the proceeds "of any settlement or judgment" was $14,000. Considering the $50,000 advanced by Shelter, and that State Farm has since reimbursed Shelter $14,000, Naylor has collected $36,000 more than his total loss. Naylor has no "right" to that money and, similarly, Shelter, having stepped into Naylor's shoes, has no right to subrogation against Siener, or State Farm on Siener's behalf, for the $36,000 overage. Had Naylor obtained a judgment of $50,000 or more, Shelter, having stepped into Naylor's shoes, would be entitled to recover its full advanced amount and perhaps more from Siener, or from State Farm on Siener's behalf.

[19] As we see it, settlement offers and statutory subrogation advances are gambles by both insurance companies to try to minimize exposure, and in this instance, Shelter took that gamble and lost to the tune of $36,000. In advancing payment to Naylor in order to reserve its full subrogation rights regarding the eventual proceeds of a trial or future settlement with Siener, Shelter was banking on those eventual proceeds being more than the advanced payment. As evidenced by the jury's verdict, Shelter greatly overestimated Naylor's actual loss. Had

---

[1] Shelter does not directly dispute the meaning of the relevant statutory language.

Shelter declined to advance State Farm's policy limits offer and Naylor had instead accepted State Farm's settlement offer and released Siener, State Farm would be in the same boat as Shelter of having overpaid Naylor for his loss. Neither insurer receives a windfall or is unjustly enriched in these scenarios. It's the name of the insurance game. As it is undisputed that State Farm has paid to Shelter the proceeds of Naylor's judgment against Siener, which is the amount actually owed to Naylor for his loss, State Farm is entitled to judgment as a matter of law on Shelter's claim for reimbursement of the monies advanced to Naylor pursuant to Ind. Code § 27-7-5-6.

[20] To the extent that Shelter urges us to ignore the import of the statutory language and maintains that our decision in *Farm Bureau* compels entry of summary judgment in its favor based upon the doctrine of promissory estoppel, we disagree. In *Farm Bureau*, Robert McCracken and Terry Bealmear were involved in an automobile accident. 765 N.E.2d at 653. McCracken was covered by an insurance policy issued by Farm Bureau, which included UIM coverage of $100,000. *Id*. Bealmear was covered by an insurance policy issued by Allstate which provided a $50,000 per person limit for bodily injury claims. *Id*. McCracken made a claim for bodily injury against Bealmear to Allstate and a claim for underinsured motorist benefits to Farm Bureau. *Id*.

[21] Approximately six months after the accident, McCracken sent a letter to Allstate, informing it that he was seeking settlement of $210,000 for his damages from the collision, and without satisfactory payment of the settlement, he would take legal action. *Id*. at 653. Thereafter, Allstate offered to pay to

McCracken its policy limits of $50,000. *Id.* Approximately one month later, Allstate advised Farm Bureau of its offer to McCracken and asked if Farm Bureau would "advance [the] offer to Mr. McCracken." *Id.* at 655. Farm Bureau did in fact advance the $50,000 to McCracken and also settled the UIM claim by paying him an additional $14,582 under his UIM coverage. *Id.* On the day before the two-year statute of limitations on McCracken's personal injury claim was set to expire, Farm Bureau sought reimbursement from Allstate of its advance payment of the $50,000, but Allstate failed to pay. *Id.* at 654.

[22] Farm Bureau filed a lawsuit against Bealmear seeking $64,582 for the payments made to McCracken which included the $50,000 advanced on the basis of Allstate's settlement offer. *Id.* Bealmear filed a motion to dismiss arguing that Farm Bureau stood in the shoes of its insured, McCracken, and was therefore bound by the two-year statute of limitations applicable to personal injury actions. *Id.* The trial court dismissed the complaint as to Bealmear as untimely but permitted Farm Bureau to file an amended complaint naming only Allstate as a defendant and seeking reimbursement of the $50,000 payment advanced to McCracken. *Id.* Both parties moved for summary judgment, and the trial court granted Allstate's motion and denied Farm Bureau's motion. *Id.*

[23] Farm Bureau appealed, raising a single issue for our review which we restated as: "[W]hether the trial court properly determined that the two-year personal injury statute of limitations applied to Farm Bureau's action against Allstate for reimbursement of an advance payment Farm Bureau made to its insured on

behalf of Allstate and Allstate's insured." *Id*. at 653. In addressing that issue, we concluded, while Farm Bureau had done what was necessary to obtain "full rights of subrogation" pursuant to Ind. Code § 27-7-5-6(b), which included the right to be subrogated in a tort action against Bealmear, Farm Bureau's complaint against Bealmear was properly dismissed as untimely. *Id*. at 657. However, because we believed that leaving Farm Bureau without subrogation recourse for reimbursement would be unjust under the specific facts related to the unfortunate timing of events that occurred, we determined that Farm Bureau's claim for reimbursement could be enforced against Allstate under the doctrine of promissory estoppel. *Id*.

[24] We noted:

> The doctrine of promissory estoppel is applicable where there is: "(1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character, (3) which does, in fact, induce such action or forbearance, and (4) injustice can only be avoided by enforcement of the promise." *Tincher v. Greencastle Federal Sav. Bank*, 580 N.E.2d 268, 272 (Ind. Ct. App. 1991).

*Id*. Applying the doctrine to the specific facts before us, we stated:

> Farm Bureau advanced Allstate's offer to McCracken per Allstate's request that it do so. Allstate's settlement offer constituted the "promise" in this case; the promise being that if Farm Bureau advanced the funds and preserved its subrogation rights pursuant to the statute, Allstate would repay the advanced funds to Farm Bureau when the matter was fully settled. Farm Bureau relied upon the promise of reimbursement and did, in

fact, advance the funds. To allow Allstate to escape its obligation to reimburse Farm Bureau by the unfortunate coincidence of the timing of Farm Bureau's settlement with its own insured would be unjust in a situation where reimbursement was clearly contemplated and relied upon by all parties at the outset. Moreover, to allow Allstate to escape reimbursement in this case could lead in the future to intentional manipulation of the timing of making offers of settlement by the insurer of an underinsured motorist such that the insurer won't have to reimburse the advance of its offer. Because the correspondence between Allstate, Farm Bureau and McCracken indicated that Farm Bureau would advance Allstate's settlement to McCracken until such time as Farm Bureau settled with McCracken and could be reimbursed by Allstate, Allstate is estopped from claiming that Farm Bureau's request for reimbursement came too late. To hold otherwise would result in a windfall to Allstate to which it was not entitled.

*Id*. at 657-658. Accordingly, we concluded the trial court erred in granting Allstate's summary judgment motion and denying Farm Bureau's motion, and we remanded with instructions for the trial court to enter summary judgment in favor of Farm Bureau in the amount of $50,000. *Id*. at 658.

[25] On rehearing, we reiterated our narrow holding under the specific facts "that the doctrine of promissory estoppel required Allstate to reimburse Farm Bureau for funds Farm Bureau had advanced to its insured on behalf of Allstate's insured despite the running of the statute of limitations as to Farm Bureau's action against Allstate's insured." *Farm Bureau*, 770 N.E.2d at 860. We further clarified:

> Our concern was specifically the timing of the sequence of events in this case and in general that a tortfeasor's insurer not be able to manipulate the timing of a policy limits offer in relation to the statute of limitations. A policy limits offer properly made and accepted pursuant to section 27-7-5-6 still operates to release the tortfeasor if a lawsuit is not timely filed. What it does not do is release the tortfeasor's insurer from the obligation to reimburse the advanced funds if a settlement is not reached between the plaintiff and his insurer within the two-year statute of limitations applicable to torts.

*Id.*

[26]  Not only is *Farm Bureau* factually distinguishable from the current case in multiple significant respects, our stated concerns about timing manipulation as well as an unjust result are simply not present here. First of all, unlike in *Farm Bureau*, Shelter is not the victim of any "unfortunate coincidence" of timing foreclosing its subrogation rights against Siener, as Shelter has already recovered all that it is entitled to from Siener based on those subrogation rights, which is $14,000.[2] *See Farm Bureau*, 765 N.E.2d at 657. Moreover, it was Naylor who requested that Shelter advance the monies equivalent to the settlement offer (the alleged promise), not State Farm. Even assuming for the sake of argument that State Farm's settlement offer to Naylor constituted a promise that induced Shelter's reliance thereon and substantial action on the

---

[2] We are confused by Shelter's continued assertion on appeal that it is somehow entitled to recover the entirety of its $50,000 advanced payment as alleged in its complaint, *see* Appellant's Brief at 15, when it is undisputed that State Farm has since reimbursed Shelter the full amount of the $14,000 jury verdict.

part of Shelter, one of the required elements and hallmarks of promissory estoppel that is lacking under the undisputed facts presented is that "injustice can only be avoided by enforcement of the promise." *Id*. (citing *Tincher*, 580 N.E.2d at 272). As we noted above, State Farm received no windfall here.[3] The only windfall was received by Naylor, as he received $36,000 more than what a jury determined to be his actual loss. We cannot say that injustice can only be avoided by enforcement of the alleged promise of reimbursement made by State Farm. Accordingly, Shelter has not met its burden of persuading us that the trial court erred in determining that it is not entitled to summary judgment on its reimbursement claim against State Farm pursuant to the doctrine of promissory estoppel.

For the foregoing reasons, we affirm the trial court's denial of Shelter's motion for summary judgment and its entry of summary judgment in favor of State Farm.

Affirmed.

Altice, C.J., and Tavitas, J., concur.

---

[3] State Farm notes in its brief that, in addition to paying "on behalf of its insured everything due under its policy" which was the $14,000 verdict obtained by Naylor, it "also paid the cost of defending its insured through the date of the verdict and the entry of judgment." Appellee's Brief at 25.

ATTORNEYS FOR APPELLANT

Douglas A. Hoffman
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana


ATTORNEYS FOR APPELLEE

John B. Drummy
Crystal G. Rowe
Kightlinger & Gray, LLP
New Albany, Indiana